**A.S. HART and A.S. Hart & Company, Inc., Plaintiffs-Appellants,**

v.

**FIRST NATIONAL BANK OF MEMPHIS, Milton C. Picard, David E. Caywood and Louis P. Santi, Defendants-Appellees.**

Court of Appeals of Tennessee, Western Section, at Jackson.

Feb. 6, 1985.

Permission to Appeal Denied by Supreme Court May 13, 1985.

J.N. Raines, Oscar C. Carr, III, Dorothy J. Pounders, Memphis, for plaintiffs-appellants.

James S. Cox, William F. Kirsch, Jr., Leo Bearman, Jr., Samuel H. Mays, Jr., Memphis, for defendants-appellees.

HIGHERS, Judge.

This case involves issues of apparent authority and interference with contractual relations. The facts may be stated in abbreviated form as follows:

In 1975, First National Bank (currently First Tennessee Bank), held $200,000 par value debentures issued by Pure Packed Foods, Inc. On July 23, 1975, the bank held a public sale for the debentures. Only defendant Picard made a bid which was

rejected by the bank. Another public sale was scheduled for August 19, 1975. In the week of August 11, Michael Robinson, attorney for A.S. Hart, discussed the sale of the debentures with Boyd Rhodes, attorney for the bank. Through Robinson, in a letter dated August 15, plaintiffs Hart and his company offered to purchase the debentures for $170,000. The letter asked Rhodes to reply "as soon as you can determine the disposition of your client." The offer was good only until 2:30 of that afternoon and was not accepted by the bank. Rhodes explained to Robinson's law firm that "the decision makers at the bank could not decide by the deadline of the offer."

In the meantime, Milton Picard and David Caywood were also interested in purchasing the debentures.[1] In an effort to maintain or raise the sale price of the debentures by competition between Hart on the one hand and Picard and Caywood on the other, Frank Bloom who, along with Kenneth Plunk, was the bank officer in charge of handling the debentures, suggested that Rhodes speak with Robinson again on Monday, August 10. In a phone conversation on that day, Rhodes asked Robinson if Hart could raise his offer by at least $5,000. According to Rhodes' testimony Robinson said he would "see if we can get the money together." According to his own testimony, Robinson said, "It's a deal" or "You can book it." When, later that afternoon, Robinson sent a check for $175,000 to Rhodes, the bank rejected the check. The debentures were sold at public sale the next day to Picard and Caywood for $176,000. Before the sale at a meeting between Rhodes, Bloom, Robinson, and other members of Robinson's law firm, Bloom denied that Rhodes ever had authority to contract for the sale of the debentures.

The plaintiffs sued First National, claiming that a contract was formed between Robinson, acting for Hart, and Rhodes, acting as the agent of the bank, and that this contract was breached when the debentures were sold to Picard and Caywood. The plaintiffs also averred that Picard and Caywood interfered with the contractual relationship.

The plaintiffs argue that Rhodes, as the bank's agent, bound the bank to a contract with Hart for the sale of the debentures for $175,000, under the general rule that a principal is bound by the acts of an agent within his apparent authority. *Tosco Corp. v. Federal Deposit Ins. Corp.*, 723 F.2d 1242 (6th Cir.1983). The plaintiffs contend that the trial court erred in ruling that Rhodes could not bind the bank to a contract absent explicit or express authority. They further maintain that except in cases where an attorney is employed with reference to pending litigation, he is the same as any other agent.

The plaintiffs never contend and the record does not support the assertion that there was any express authority from the bank to Rhodes empowering him to make a contract with Hart or any of the other parties. Whether express authority is necessary for First National to be bound by the purported agreement between Rhodes and appellant's attorney, Robinson, is argued forcefully and well by both sides. The law on this point apparently varies somewhat from one jurisdiction to another. According to 7A C.J.S. *Attorney & Client* § 211, "the attorney may enter into contracts on behalf of his client where he has been expressly *or ostensibly* authorized to do so ..." (Emphasis added). In 7 Am. Jur.2d *Attorneys at Law* § 129, it is indicated, however, that:

> where an attorney is employed for a definite purpose not involving litigation in court, the authority of the attorney does not extend to transacting the business of the client generally, nor in the particular transaction for which he was employed, except as the attorney may be specifically authorized by the client to act.

---

1. The First National Bank of Memphis will be referred to herein as First National, or the bank; A.S. Hart and A.S. Hart & Company, Inc. as the plaintiffs or by name; and Milton C. Picard and David E. Caywood by their last names. Louis P. Santi was dismissed as a defendant by consent on February 25, 1977.

■ As between these apparently contradictory positions, we believe the law in Tennessee follows more closely the latter rule. In *Davis v. Home Ins. Co.*, 127 Tenn. 330, 155 S.W. 131 (1913), attorneys were entrusted with the collection of a premium note on an insurance policy payable to Home Insurance and upon which a judgment had been issued. Davis, in conferring with the attorneys for Home Insurance, was advised by them that a stay of the judgment would be equivalent to paying the note, a very attractive result to complainant as he was low on funds at the time. When Home Insurance later pressed for payment or for forfeiture of the insurance policy, complainant raised the attorneys' advice by way of estoppel. Stating that "[a]ttorneys have no power to surrender substantial rights of their clients without express authority," the Tennessee Supreme Court refused to bind Home Insurance by the conduct of its attorneys, "even if [the attorneys] had undertaken to make a definite agreement with complainant to accept a stayed judgment as payment of this premium note." 155 S.W. at 133. *See also Garrett v. Corry Foam Products, Inc.*, 596 S.W.2d 808 (Tenn.1980), (reaffirming the principle of *Davis v. Home Ins. Co.*). In *Moses v. Marcrief*, 2 Tenn.Cas. (Shannon) 181 (1876) the Court held that an attorney was not authorized to receive anything but money for his client in the satisfaction of a judgment and that the client was not bound by any contrary agreements made by the attorney. *See also Washington v. Johnson*, 26 Tenn. (7 Humphrey) 468 (1846) and *Watson v. McCabe*, 527 F.2d 286 (6th Cir. 1975), (an attorney may not purchase real estate for his client unless so authorized). Of course, an attorney in the conduct of litigation has certain powers by which his client may be bound, *East Tennessee V. & G.R. Co. v. Williams*, 3 Tenn.Cas. (Shannon) 8 (1878); *Long v. Kirby-Smith*, 40 Tenn.App. 446, 292 S.W.2d 216 (1956). This authority, however, is implied and is distinguishable because it involves the attorney-client relationship in litigation. 7A Am.Jur.2d *Attorneys at Law* § 211; *Long v. Kirby-Smith, supra* (in which the court reiterated the rule in *Davis v. Home Ins. Co.*).

Even if apparent authority could bind a client to a contract made by his attorney in a non-litigation context, such authority is lacking in the facts of this case. In *Rich Printing Company v. McKellar's Estate*, 46 Tenn.App. 444, 330 S.W.2d 361 (1959), this Court set forth three definitions of apparent authority:

> Apparent authority in an agent is [1] such authority as the principal knowingly permits the agent to assume or which he holds the agent out as possessing; [2] such authority as he appears to have by reason of the actual authority which he has; [3] such authority as a reasonably prudent man, using diligence and discretion, in view of the principal's conduct, would naturally suppose the agent to possess.

330 S.W.2d at 376 (quoting *Rural Education Ass'n v. Bush*, 42 Tenn.App. 34, 298 S.W.2d 761, 766 [1956] and *Southern Railway Co. v. Pickle*, 138 Tenn. 238, 197 S.W. 675, 677 [Tenn.1917]); *see also V.L. Nicholson Co. v. Transcon Inv. & Financial Ltd., Inc.*, 595 S.W.2d 474 (Tenn.1980); *Ford Motor Credit Co. v. Weaver*, 680 F.2d 451 (6th Cir.1982).

■ In his testimony, Robinson, attorney for Hart, stated that he spoke to no officers of the bank except Rhodes. Thus, plaintiffs cannot hope to establish apparent authority under the first definition, because agency cannot be proved by the declarations of the supposed agent. *Heywood Feed Ingredients, Inc. v. State ex rel. Moulton*, 49 Tenn.App. 544, 356 S.W.2d 605 (1961); *Umstattd v. Metropolitan Life Ins. Co.*, 21 Tenn.App. 312, 110 S.W.2d 342 (1937).

■ The second definition is really a definition of implied authority and does not arise unless some express or apparent authority already exists. *Hoskins, Heiskell & Co. v. Johnson*, 37 Tenn. (5 Sneed) 469 (1858); 2A C.J.S. *Agency* § 153.

The question, then, assuming express authority is not necessary where an attorney

is the purported agent, is whether Robinson and Hart, as ordinarily prudent men using diligence and discretion, in view of the principal's conduct, would naturally suppose that Rhodes possessed the authority to enter into a contract to sell the debentures for First National. Remembering that we may not rely exclusively on the statements of Rhodes, the purported agent, we must focus on the principal's conduct. The plaintiffs argue that apparent authority existed because the bank officials, Bloom and Plunk, knew of the August 15 offer from Robinson, and encouraged Rhodes to make a counter offer, but never informed Robinson that Rhodes did not have authority to contract, or that the counter offer was subject to limitations.

■ The only possible way this scenario can be construed to establish apparent authority is for the bank officials, Bloom or Plunk, to have known that Robinson believed that Rhodes had authority to contract, and not to have advised Robinson of the situation. There is certainly not sufficient evidence of this to preponderate against the trial court's indication that no apparent authority existed. Bloom and Plunk received nothing to suggest that Robinson believed that Rhodes had authority to contract. Of course, they knew of Robinson's offer of August 15. In that letter Robinson asks Rhodes for a reply "as soon as you can determine the disposition of your client." Moreover, when Rhodes called to explain why the offer was not accepted, he stated that the decision makers *at the bank* could not decide by the deadline of the offer. Thus, Robinson appeared to have understood that Rhodes was not in a position to bind the bank to a contract. We conclude, therefore, that no apparent authority existed because the bank officials neither indicated that Rhodes had the requisite authority, nor had any reason to know that Robinson believed that Rhodes did have such authority. The judgment of the trial court in favor of First National Bank is, therefore, affirmed.

■ The plaintiffs' claim against Picard and Caywood for interference with a contractual relationship is based on T.C.A. § 47–15–113. Under this statute, several criteria must be met:

1. There must be a legal contract.
2. The wrongdoer must have knowledge of the existence of the contract.
3. There must be an intention to induce its breach.
4. The wrongdoer must have acted maliciously.
5. There must be a breach of the contract.
6. The act complained of must be the proximate cause of the breach of the contract.
7. There must have been damages resulting from the breach of the contract.

*Dynamic Motel Management, Inc. v. Erwin*, 528 S.W.2d 819, 822 (Tenn.App.1975). In affirming the judgment of the trial court, we need go no further than the first criterion set forth in *Dynamic Motel*. Since Rhodes did not possess either express authority or apparent authority to contract for the sale of the debentures, and since neither Bloom nor Plunk entered into such a contract, there was no legal contract in existence with which Picard and Caywood could have interfered.

Picard and Caywood have moved for damages for frivolous appeal under T.C.A. § 27–1–122. We find no merit in that contention and deny the motion. The judgment of the court below is accordingly affirmed in all respects. Costs are taxed against the plaintiffs.

NEARN, P.J. (W.S.), and TOMLIN, J., concur.