**FRANKLIN DISTRIBUTING CO., INC. and E. Thomas Gray, d/b/a Gray Enterprises, Inc., Plaintiffs-Appellants,**

v.

**CRUSH INTERNATIONAL (U.S.A.), INC.; Sun Drop Bottling Co., Inc.; Julian Johnson, Individually and as Executor of the Estate of Mary Smith Johnson; David Johnson, Sr. and wife, Mary Wade Johnson, David Johnson, Jr. and wife, Beverly Johnson, Glenn Gordon and wife, Jo Anne Gordon, all individually and d/b/a J & G Building Partnership, William N. Wall and wife, Roberta M. Wall; and Herb Helton, Defendants-Appellees,**

and

**Marshall County Soft-Drink Distributors, Inc., Third-Party Defendant.**

Court of Appeals of Tennessee,
Western Section, at Nashville.

Oct. 10, 1986.

Application for Permission to Appeal to
Supreme Court Nov. 12, 1986.

Application to Appeal Denied by
Supreme Court Jan. 5, 1987.

Boult, Cummings, Conners & Berry, Davis H. Carr, Robert S. Patterson, Samuel D. Lipshie, Nashville, and Dubois & Graham, James T. DuBois, Columbia, for plaintiffs-appellants.

Kirkland & Ellis, William A. Streff, Jr., Chicago, Ill., and Colley and Kennedy, Jerry C. Colley, Columbia, for defendant-appellee Crush Intern. (U.S.A.).

FARMER, Judge.

This case originated in Chancery Court of Maury County with the plaintiffs, Franklin Distributing Company, Inc., (Franklin) and E. Thomas Gray, president and owner of Franklin, seeking a declaratory judgment that Franklin is the sole distributor of Sun Drop Cola in Maury and Williamson Counties. The Sun Drop trademark is owned by Crush International, (U.S.A.), Inc., (Crush) and the soft drink is bottled in Middle Tennessee pursuant to a franchise agreement between Crush and Sun Drop Bottling Company, Inc., of Pulaski, (Sun Drop Bottling). Crush and Sun Drop Bottling were named as defendants along with the J & G Building Partnership and its individual partners which own Sun Drop Bottling, and three independent distributors. All parties moved for summary judgment. The Chancellor granted summary judgment as to some parties but not others. In particular, the Chancellor granted Crush's motion but denied the plaintiffs', Franklin and Gray. Pursuant to an interlocutory appeal, the plaintiffs are before us challenging only the trial judge's dismissal of Crush from the case.

The question that is before this Court is whether any genuine issue of material fact exists that Crush, as a franchisor, clothed the bottling company as a franchisee, with apparent authority, thereby binding Crush to contracts entered into by Sun Drop Bottling. We find that no genuine issue of a material fact has been raised and affirm.

In determining whether Rule 56 of the Tennessee Rules of Civil Procedure has been satisfied, this Court must view the pleadings, depositions, answers to interrogatories, affidavits, and admissions in a light most favorable to the opponents of the motion for summary judgment. *Price v. Mercury Supply Co.*, 682 S.W.2d 924, 929 (Tenn.App.1984), and *Bennett v. Mid-South Terminals Corp.*, 660 S.W.2d 799,-800 (Tenn.App.1983). This Court will proceed to deny summary judgment if the material facts are in dispute, or if there is uncertainty as to whether the material facts are in dispute, or if there is disagreement between the parties as to the inferences to be drawn from the material facts. *Knapp v. Holiday Inns, Incorporated*, 682 S.W.2d 936,940 (Tenn.App.1984).

The material facts in the instant case are as follows: On February 4, 1976, Crush and Sun Lrop Bottling entered into a fran-

chise agreement whereby the bottling company would manufacture, bottle, and sell Sun Drop Cola within much of the Middle Tennessee area. While Sun Drop Bottling covenanted to use its best efforts to sell the soft drink within its designated territory, the bottling company was expressly prohibited from selling, transferring, assigning or otherwise disposing of its rights and privileges under the franchise agreement without first obtaining written consent from Crush.

The franchise agreement did not indicate the method by which Sun Drop Bottling would distribute the soft drink. Crush was aware that its bottling companies would generally use either driver salesmen who distributed the Sun Drop products from trucks owned by the bottler, or independent distributors who purchased the Sun Drop products from the bottler and then distributed these products from their own trucks.

Franklin was an independent distributor which acquired the distributorships to Williamson and Maury Counties via Gray. Gray acquired the Williamson County distributorship in 1973 prior to the formation of Franklin. That year, Gray negotiated with William N. and Roberta M. Wall who were then the independent distributors for Williamson County.

During the parties' negotiations, Gray became convinced that the Walls had a franchise to sell Sun Drop products in Williamson County. Gray states that he based this belief upon the representations of the Walls and of Sun Drop Bottling. On August 18, 1978, the Walls and Gray executed a contract whereby the Walls purported to "sell, transfer and assign to [Gray] their franchise and right to distribute products offered by the Sun Drop Bottling Company ...." Further, the Walls referred to their rights as exclusive. Gray purchased this "franchise" for $60,000 directly from the Walls.

On October 30, 1978, Franklin, which by this time was incorporated, and Sun Drop Bottling executed a contract entitled, "Sun Drop Bottling Company, Incorporated Distributor Agreement." Gray signed the distributorship agreement stating that he had purchased the exclusive rights to Williamson County from the Walls and that this contract between Franklin and Sun Drop Bottling was to provide Gray with a source for his drinks within the area.

In 1979 Gray, acting again on behalf of Franklin, initiated negotiations with Herb Helton, who was the independent distributor for Sun Drop Bottling for Maury County. The parties executed a contract on September 28, 1979, whereby Franklin purchased the Maury County distributorship for $150,000 directly from Helton. As signatory to the contract, Gray believed that the distributorship was exclusive. The terms of the contract indicate that Helton agreed to sell to Franklin his rights in Sun Drop products which were an "exclusive distributorship." Gray claims that Sun Drop Bottling also informed him that Helton "owned Maury County."

On October 8, 1979, Franklin and Sun Drop Bottling once again entered into a "distributorship agreement," this one covering Maury County. Unlike the previous agreement, this contract made explicit references to the franchise agreement that Sun Drop Bottling had with Crush. Moreover, the distributorship agreement provided that, "[t]he provisions of this contract between bottler and distributor are to be construed in subordination to said franchise agreement ... and in case of conflict ... the franchise agreement shall prevail." Although Sun Drop Bottling purported to attach a copy of the franchise agreement to the contract, there was no such attachment.

Then in June, 1980, (according to plaintiffs' complaint) Crush provided Franklin with a copy of the franchise agreement between it and Sun Drop Bottling. From the franchise agreement, Franklin became aware that it had not purchased exclusive distributorships in Maury and Williamson Counties and brought this action.

We must first consider whether Franklin and Gray may raise the issue of apparent authority on appeal. Crush asserts that (1) Franklin's and Gray's motion for summary judgment precludes them from now argu-

ing that a genuine issue of material fact exists, and (2) Franklin and Gray failed to raise the apparent authority issue at the trial level.

■ The essence of Crush's first argument is that Franklin and Gray may not assert on appeal that material facts exist after stating in its motion for summary judgment that no material facts exist. The State Supreme Court has held that a party does not have "to stand" on its motion for summary judgment. "When a plaintiff's motion for summary judgment has been overruled, he has simply lost a preliminary skirmish and must proceed to trial." *Williamson County Broadcasting Co. v. Williamson County Board of Education*, 549 S.W.2d 371, 372 (1977). While the Tennessee courts have not addressed Crush's argument in the context of an interlocutory appeal, we find that a party does not have to stand on his summary judgment motion for purposes of such an appeal. At the "motion stage" of the trial, both parties may be relying upon differing theories of law. Thus, the facts which are material for purposes of one party's motion for summary judgment may be immaterial for the purposes of the other party's motion for summary judgment. As stated by the Sixth Circuit Court of Appeals:

Each, in support of his own motion, may be willing to concede certain contentions of his opponent, which concession, however, is only for the purpose of the pending motion. If the motion is overruled, the concession is no longer effective. Appellants' concession that no genuine issue of fact existed was made in support of its own motion for summary judgment. We do not think that the concession continues over into the Court's separate consideration of appellee's motion for summary judgment in his behalf after appellants' motion was overruled.

*Begnaud v. White*, 170 F.2d 323, 327 (6th Cir.1948). *See also Walling v. Richmond Screw Anchor Co.*, 154 F.2d 780 (2nd Cir. 1946), *cert. denied*, 328 U.S. 870, 66 S.Ct. 1383, 90 L.Ed. 1640 (1946). Moreover, the Fifth Circuit Court of Appeals has held as recently as 1979 that, where cross motions are filed for summary judgment, the losing party is not estopped from asserting on appeal that genuine issues of fact exist.

A plaintiff, having lost on his motion for a summary judgment, would be free to argue on review that there were issues of material fact which should have been resolved before deciding the case by summary judgment in favor of the defendant's theory of law.

*Vetter v. Frosch*, 599 F.2d 630, 632 (5th Cir.1979). Thus, this Court is not convinced that Franklin and Gray are precluded from appealing the dismissal of Crush simply because they moved for summary judgment at the trial level.

■ The essence of Crush's second argument is that the trial judge did not consider the issue of apparent authority for purposes of the summary judgment. The record indicates that, subsequent to the filing of their complaint, Franklin and Gray filed an amendment with the following pertinent language:

After the execution of the franchise agreement with Crush International, and prior to Plaintiffs' purchase of rights, Crush International, acting through its employees, managers or other agents, knew or should have known of the practices being engaged in by Defendant Bottling Company in continuing to maintain its prior relationship with its county-wide distributors ...

The Chancellor granted the amendment to the complaint on January 31, 1983. Prior to this amendment, the complainants based their case on theories of estoppel. Oral argument for all summary judgment motions was heard on January 21 and February 7, 1983. Crush argues that the amended complaint may not be considered by this Court because it came after the hearing on the summary judgment motion and was thus, an issue not raised at the trial level. However, Crush disregards the fact that the trial judge considered "the pleadings as amended" in reaching his decision for purposes of the final order on December 8, 1985. Thus, the pleadings are before this Court pursuant to Ct. of App. Rule 4.

■ Crush also fails to recognize that estoppel and apparent authority are similar doctrines whenever a plaintiff argues, as Franklin and Gray here argued at the trial level and on appeal, that the principal is estopped from denying that he had clothed the agent with authority. *See Umstattd v. Metropolitan Life Insurance Co.*, 21 Tenn. App. 312, 110 S.W.2d 342, 347 (1937); *Industrial Plumbing & Heating Supply Co. v. Carter County Bank*, 25 Tenn.App. 168, 154 S.W.2d 432, 434 (1941); *Southern Railway Co. v. Pickle*, 197 S.W. 675, 677 (1917), *quoting* 2 Corpus Juris 570–573; *see also* 2A CJS *Agency*, § 157 (1972) [1]. Thus, Franklin and Gray are properly before this Court arguing that Crush is estopped to deny the existence of the exclusive territorial rights of Franklin because Crush clothed Sun Drop Bottling with apparent authority to grant such rights.

Whether an agency relationship exists at all must be determined by the facts and circumstances of the case. The intentions of the parties are not controlling. *Rich Printing Company v. McKellar's Estate*, 46 Tenn.App. 444, 330 S.W.2d 361, 376 (1959).

■ Thus, the fact that Crush refers to Sun Drop Bottling as an independent contractor in the parties' franchise agreement is of no significance. *U.S. v. Boyd*, 211 Tenn. 139, 363 S.W.2d 193 (1962), *affirmed*, 378 U.S. 39, 84 S.Ct. 1518, 12 L.Ed.2d 713 (1964). What is significant is whether the "principal authorizes the agent to act for the principal's benefit [and] at the same time retains the right to control the agent's conduct." *Hussmann Refrigeration, Inc. v. South Pittsburg Associates*, 697 S.W.2d 588, 592 (Tenn.App.1985) *citing Howard v. Haven*, 198 Tenn. 572, 281 S.W.2d 480, 485 (1955); *Foster Trailer Co. v. United States Fidelity and Guaranty Co.*, 190 Tenn. 181, 228 S.W.2d 107, 109 (1950); *Kerney v. Aet-*

*na Casualty and Surety Co.*, 648 S.W.2d 247, 252 (Tenn.App.1982); and *Nidiffer v. Clinchfield Railroad Co.*, 600 S.W.2d 242, 245 (Tenn.App.1980). We find that Sun Drop Bottling was an agent of Crush. In accordance with the franchise agreement, Crush reaped the benefits of Sun Drop Bottling's manufacturing, bottling and selling of Sun Drop Cola. More importantly, Crush had the requisite control because it could terminate the franchise if Sun Drop Bottling performed in contravention of the agreement.

Franklin and Gray assert that Sun Drop Bottling provided them with exclusive distributorships. If such is the case, then Sun Drop Bottling went beyond the scope of its authority as defined by the franchise agreement. The question then is whether Crush clothed Sun Drop Bottling with apparent authority to contract for exclusive distributorships.

The doctrine of apparent authority has been consistently defined as follows:

(1) such authority as the principal knowingly permits the agent to assume or which he holds the agent out as possessing;

(2) such authority as he appears to have by reason of the actual authority which he has; [2]

(3) such authority as a reasonably prudent man, using diligence and discretion, in view of the principal's conduct, would naturally suppose the agent to possess.

*See Southern Railway Co. v. Pickle*, 197 S.W. 675, 677 (1917); *Rich Printing Company v. McKellar's Estate*, 46 Tenn.App. 444, 330 S.W.2d 361, 376 (1959); *Rural Educational Association v. Bush*, 42 Tenn. App. 34, 298 S.W.2d 761, 766 (1956); *Hart v. First National Bank*, 690 S.W.2d 536, 539 (Tenn.App.1985); *see also V.L. Nicholson Co. v. Transcon Investment and Fi-*

---

1. "[A]pparent authority is in the nature of authority by estoppel, in that the principal, having clothed the agent with the semblance of authority, by his conduct or inaction as the case may be, will not be permitted after others have been led to act in reliance on the appearances thus produced, to deny, to the prejudice of such others, what he has theretofore tacitly affirmed as to the extent of the agent's powers." 2A C.J.S. *Agency*, § 157.

2. As stated by this Court in 1985, this particular definition is really one of implied authority. Thus, it is not applicable to the instant case. *Hart*, 690 S.W.2d at 539.

*nancial Ltd., Inc.*, 595 S.W.2d 474, 483 (Tenn.1980).

■ As is evident from the definition, apparent authority must be established through the acts of the principal rather than the agent. The State Supreme Court adopted this requirement in 1917 stating that:

> The apparent power of an agent is to be determined by the acts of the principal and not by the acts of the agent; a principal is responsible for the acts of an agent within his apparent authority only where the principal himself by his acts or conduct has clothed the agent with the appearance of authority, and not where the agent's own conduct has created the apparent authority.

*Southern Railway Co.*, 197 S.W. 675 (1917), *quoting* 2 Corpus Juris 574–575; *see also Kelly v. Cliff Petit Motors, Inc.*, 191 Tenn. 390, 234 S.W.2d 822, 824 (1950); *Sloan v. Hall*, 673 S.W.2d 548, 551 (Tenn. App.1984); *Bailey v. Life & Casualty Insurance Co.*, 35 Tenn.App. 574, 250 S.W.2d 99, 103 (1951); and *V.L. Nicholson, supra,* at 483 (Supreme Court established apparent authority for two agents based upon the actions of the parties' principals).

■ The undisputed material facts indicate that there was no conduct on the part of Crush that would indicate Crush had clothed Sun Drop with apparent authority to contract for exclusive distributorships. Indeed, Gray stated in his deposition that he had never contracted with Crush nor had he even discussed with Helton, the Walls, or representatives of Sun Drop concerning the existence of Crush. As far as Gray was concerned, he was purchasing a franchise from the Walls for Williamson County and a franchise from Helton for Maury County. With respect to both counties Gray stated that, "I didn't rely on anything that Sun Drop Bottling did with respect to its distributors or that Crush did with Sun Drop Bottling or with Sun Drop Bottling's distributors."

Construing the evidence in its most favorable light for Franklin and Gray, we note that the distributorship agreement between Sun Drop Bottling and Franklin with respect to Maury County did provide that the bottler agreed "[n]ot to sell Bottler's products to any other distributor in the distributor [sic] territory." Assuming *arguendo* that this provided Franklin and Gray with an exclusive distributorship for Maury County, this communication came from the agent, Sun Drop Bottling, and not from Crush. In *Hart* this Court rejected a claim of apparent authority where the plaintiffs' agent entered into a contract with the defendant's agent. The plaintiffs tried to bind the defendant to the contract, but the Court, noting that the plaintiffs' agent had only conferred with the defendant's agent, stated, "... plaintiffs cannot hope to establish apparent authority under the first definition, because agency cannot be proved by the declarations of the supposed agent." *Hart*, 690 S.W.2d at 539 *citing Heywood Feed Ingredients, Inc. v. State ex rel. Moulton*, 49 Tenn.App. 544, 356 S.W.2d 605 (1961), and *Umstattd v. Metropolitan Life Insurance Co.*, 21 Tenn. App. 312, 110 S.W.2d 342 (1937).

Thus, the purported granting of an exclusive distributorship came solely from Sun Drop Bottling and not from Crush. The same result obtains for the purported communications from representatives of Sun Drop Bottling to Gray concerning Gray's "ownership rights" of Maury and Williamson Counties. In essence, there were no representations by Crush that would lead to a finding of apparent authority. *Ford Motor Credit Co. v. Weaver*, 680 F.2d 451, 457 (6th Cir.1982).

The fact that there was no conduct on the part of Crush necessarily precludes any notion that Franklin and Gray reasonably believed that Crush had clothed Sun Drop Bottling with the authority to contract for exclusive distributorships. We also note that it is difficult to discern how Franklin could believe that it got exclusive distributorships for the two counties from Sun Drop Bottling after purportedly buying exclusive distributorships from two independent distributors.

Finally, there is no genuine issue of a material fact that Crush knowingly permitted Sun Drop Bottling to assume apparent

authority to contract for these supposedly exclusive distributorships. While there is some dispute whether an agent of Crush knew about these contracts, this is not a genuine issue because the aforementioned facts indicate that there was no reasonable belief on the part of Franklin and Gray that Crush had clothed Sun Drop Bottling with authority. Therefore, there can be no apparent authority. *See Sloan, supra,* 551–552.

The judgment of the trial court is affirmed. The costs of this appeal are taxed to the appellants, for which execution may issue if necessary.

TOMLIN, P.J., and CRAWFORD, J., concur.