Donna **RAINES**, Brenda Billingsley, Alma King, Mary Long, Vannessa Morrisson, Darlene Reed, Roberta Meyers, and Joan Williams, Plaintiffs,

v.

**SHONEY'S, INC.**, a Tennessee Corporation; Jess Shearin, Individually and d/b/a Shearin Foods; City of Kimball, Tennessee; Roger Frizzell, Individually and In His Capacity as a Police Officer With the City of Kimball, TN; Clara Lapshaw, and In Her Capacity as a Police Officer With the City of Kimball, TN; and Angie Pelham, Individually and as Managing Employee of Shearin Foods and Shoney's, Inc., Defendants.

No. 1:94–CV–47.

United States District Court,
E.D. Tennessee.

Nov. 22, 1995.

Harry F. Burnette, Brown, Dobson, Burnette & Kesler, Chattanooga, TN, Martin J. Levitt, Levitt & Levitt, Chattanooga, TN, for plaintiffs Donna Raines, Brenda S. Billingsley, Alma King, Mary Long, Vanessa Morrison, Darlene Reed, Roberta Myers, and Joann Williams.

Gary M. Brown, Farris, Warfield & Kanaday, Nashville, TN, Thomas O. Helton, Baker, Donelson, Bearman & Caldwell, Chattanooga, TN, for defendant Shoney's, Inc.

John B. Curtis, Jr., Leitner, Warner, Moffitt, Williams, Dooley, Carpenter & Napo, Chattanooga, TN, for defendants Shearin Foods, and Jess Shearin.

Ronald D. Wells, Robinson, Smith & Wells, Chattanooga, TN, for defendants City of Kimball, TN, Roger Frizzell, and Clara Lapshaw, Individually and in their capacity as police officers with the City of Kimball.

Joe E. Manuel, Nelson, McMahan, Parker & Noblett, Chattanooga, TN, for defendant Angie Pelham, Individually and as a manag-

ing employee of Shearin Foods and Shoney's Inc.

## MEMORANDUM

COLLIER, District Judge.

Before the Court are the Motions for Summary Judgment of Defendants Shoney's, Inc. ("Shoney's") (Court File No 27), Jess Shearin d/b/a Shearin Foods ("Shearin") (Court File No. 70), and Angie Pelham ("Pelham") (Court File No. 72).[1] Plaintiffs brought this action seeking a determination of liability and damages for alleged wrongful acts that occurred in a Shoney's restaurant in Kimball, Tennessee on or about May 23, 1993. After carefully considering Defendants' motions, Plaintiffs' responses, and the applicable law, the Court will **GRANT** the motions for summary judgment as to Shoney's and Shearin, but will **GRANT IN PART** and **DENY IN PART** the motion for summary judgment as to Pelham.

### I. FACTS

The following summary of the salient facts is taken from the pleadings of the parties, their supporting affidavits, and submitted excerpts from deposition testimony.

The complained of actions all occurred on or about May 23, 1993. All of the Plaintiffs were employees of the Shoney's restaurant in Kimball, Tennessee. Jess Shearin owned and operated this restaurant as a franchisee (Court File No. 27, Aff. of Jess Shearin at p. 2). The restaurant employed both female and male employees and also both white and black employees. While Plaintiffs worked at the restaurant, an employee discovered approximately $600.00 missing from a cash register (Court File No. 15, p. 3). Upon the discovery of the missing cash, Pelham, manager of the Kimball restaurant, called the Kimball, Tennessee police department. Defendant Roger Frizzell ("Frizzell"), a male, and Defendant Clara Lapshaw ("Lapshaw"), a female, investigated the call.

Once the officers arrived, Pelham and the officers allegedly forced Plaintiffs to partially disrobe and submit to a search of their per-

---

**1.** Defendants City of Kimball, Tennessee, Roger Frizzell, and Clara Lapshaw have not filed motions for summary judgment. Accordingly, the Court takes no action with respect to their cases.

sons and property.[2] Except for one employee, all of the employees present were detained during the search.[3] The officers searched each Plaintiff. Frizzell searched the male employees, and Lapshaw searched all of the female employees, except Plaintiff Donna Raines.[4] One plaintiff underwent a polygraph test after the search. The searches did not produce the missing money on any of the employees.[5]

## A. *Shoney's*

Shoney's is a national corporation headquartered in Nashville, Tennessee. As of October 31, 1993, Shoney's operated 767 restaurants located in 24 states. These restaurants are chains and use the trade names of "Shoney's," "Captain D's," "Lee's Famous Recipe," "Pargo," and "Fifth Quarter." "Shoney's" is a trademark and a service mark. Shoney's also licenses its trademarks and service marks under a license or franchise agreement. The franchise restaurants using Shoney's trademarks and/or service marks are owned and operated by independent business people and are not owned nor operated by Shoney's (Court File No. 27, Aff. of F.E. McDaniel, Jr. at p. 3). Jess Shearin owned and operated the Shoney's restaurant in Kimball as a franchise restaurant.

There is no evidence Shoney's exercised any control over the day-to-day operations of the restaurant. There also is no evidence Shoney's either directed, knew of, or played any role at all in the alleged events. Nor is there evidence employees or representatives of Shoney's played any part in the events or were at the restaurant when the events took place. Shoney's involvement here stems solely from the licensing of its name to the Shearin franchise. (*See generally* Court File No. 28).

## B. *Jess Shearin*

■ Jess Shearin, as franchisee, is the owner and operator of the Shoney's restaurant in Kimball and three other restaurants using the Shoney's name. He operates the restaurants under the name of Shearin Foods, a sole proprietorship. At the time of the search, he was not on the premises of the Kimball restaurant nor was he aware of the events as they took place (Court File No. 70, Ex. 1 at p. 1). Ron Spry, a Shearin employee, managed the restaurants on a day-to-day basis, but was not present at the restaurant at the time of the search (*Id.*, Ex. 2 at p. 1). However, the parties dispute whether Shearin authorized the polygraph examination.[6] Shearin's potential liability arises from his ownership of the Shoney's Restaurant in Kimball.

## C. *Angie Pelham*

On the day of the incident, Pelham managed the Shoney's Restaurant (Court File No. 15, p. 3). The complaint alleges upon

---

**2.** The defendants contend that the employees consented to the searches.

**3.** This employee, Karen Smith, left the restaurant before the search began.

**4.** According to the complaint, plaintiff Raines objected to a search and stated she was leaving the restaurant. Defendant Pelham allegedly then took her into an inner office and forcibly searched her.

**5.** Due to the number of plaintiffs, the number of defendants, the multitude of causes of actions, the factual variations with respect to each defendant, and the specific allegations with respect to each defendant, the Court will set out the facts and its analysis as to each defendant.

**6.** Plaintiffs claim that Defendants violated the Employee Polygraph Protection Act, 29 U.S.C. § 2001 *et seq.* To support a cause of action

under this act, there must be evidence that the employee undergoing the polygraph examination was discriminated against or fired as a result of the polygraph. The deposition of Ms. King indicates she submitted to the polygraph and, subsequently, quit because she was being "verbally abused" by Pelham (Court File No. 73, App. 5, King deposition, p. 56). The deposition of Ms. King does not suggest that this behavior was the result of the polygraph. As a matter of fact, in her deposition, Ms. King testified Pelham was no more difficult to get along with "than usual" (King deposition, p. 59). Hence, there is no evidence supporting the notion of adverse action being taken against King as a result of the polygraph examination.

In addition, there may be a cause of action under the act if proper procedures were not followed in administering the polygraph. There is no evidence that the proper procedures were not followed. Accordingly, summary judgment will be **GRANTED** as to the Defendants regarding this claim.

discovery of the missing money from the cash register, Pelham called the Kimball police department and detained the employees within the store. (*Id.* at pp. 3-4). The complaint then claims Pelham strip-searched the employees. While searching the employees, Pelham allegedly made humiliating statements regarding some of the employees' clothing. Plaintiffs also accuse Pelham of forcing them to disrobe in the view of Defendant Frizzell. After the searches of the employees and their effects, Pelham allegedly threatened Plaintiffs to prevent them from suing.

## II. BACKGROUND

Plaintiffs have alleged several separate causes of action against Defendants arising out of the events at the restaurant. Since Shearin was not at the restaurant at the time of the events, Plaintiffs proceed against him based upon his position as the owner and operator of the restaurant and the employer of Pelham. Plaintiffs base their claim against Shoney's on a vicarious liability theory. According to Plaintiffs, Pelham acted as the main perpetrator. The claims against her are based upon her actions and her actions in concert with the two Kimball police officers. Some causes of action are pursuant to federal law, some are pursuant to state law, and two are mixed federal/state causes of action. Plaintiffs allege three distinct federal causes of action, four state common law causes of action, and two mixed law causes of action.

The federal causes of action are:
(1) Count VIII—42 U.S.C. § 1983
(2) Count X—42 U.S.C. § 1985, and
(3) Count XI—42 U.S.C. § 1986.[7]

The state causes of action are:
(1) Count VI—Negligent Hiring [8]
(2) Count VII—False Imprisonment
(3) Count IX—Intentional Infliction of Emotional Distress, and

(4) Count XII—Assault and Battery.

The mixed law causes of action are:
(1) Count V—Unlawful Search and Violation of Privacy under both the United States Constitution and the Tennessee Constitution, and
(2) Count IV—Sexual harassment pursuant to the Tennessee Human Rights Act.

## III. STANDARD OF REVIEW

Under *Fed.R.Civ.P.* 56(c), the Court will render summary judgment if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. The burden is on the moving party to conclusively show that no genuine issue of material fact exists, *Lansing Dairy, Inc. v. Espy,* 39 F.3d 1339, 1347 (6th Cir. 1994); *Kentucky Div., Horsemen's Benev. & Prot. Assoc., Inc. v. Turfway Park Racing Assoc., Inc.,* 20 F.3d 1406, 1411 (6th Cir. 1994), and the Court must view the facts and all inferences drawn therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Oakland Gin Co., Inc. v. Marlow,* 44 F.3d 426, 429 (6th Cir. 1995); *City Management Corp. v. U.S. Chemical Co., Inc.,* 43 F.3d 244, 250 (6th Cir.1994). Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations. The nonmoving party may not rest on its pleadings but must come forward with some significant probative evidence to support its claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Lansing Dairy,* 39 F.3d at 1347; *Horsemen's Benev.,* 20 F.3d at 1411. If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of

---

7. This cause of action seemingly only applies to the City of Kimball. The complaint states that only the city is liable for the negligent hiring of Frizzell. Since the city is not directly involved in these motions, the Court will not further discuss this issue.

8. This cause of action is against defendant City of Kimball and its two police officers, Frizzell and Lapshaw. Since those defendants are not involved in this motion, the Court will not further discuss this cause of action.

proof, the moving party is entitled to summary judgment. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552–53.

The Court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question but does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986); *60 Ivy Street Corp. v. Alexander,* 822 F.2d 1432, 1435–36 (6th Cir. 1987). The standard for summary judgment mirrors the standard for directed verdict. The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–52, 106 S.Ct. at 2512. There must be some probative evidence from which the jury could reasonably find for the nonmoving party. If the Court concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment. *Id.; Lansing Dairy,* 39 F.3d at 1347; *Horsemen's Benev.,* 20 F.3d at 1411.

## IV. *DISCUSSION*

Shoney's moved for summary judgment as to all counts, based on the claim it neither owned nor operated the restaurant, did not direct the alleged actions, and in no other way was responsible for the events. Shoney's argues that vicarious liability does not apply due to the relationship between Shoney's and Jess Shearin, which was that of an independent contractor and not that of principal and agent or master-servant (*See generally* Court File No. 28). Plaintiffs filed a comprehensive opposition to this motion (Court File No. 40).

Shearin also moved for summary judgment with respect to all counts. He argues that Plaintiffs' theory of *respondeat superior* does not apply to actions under 42 U.S.C. §§ 1983 and 1985. He argues violations of the United States Constitution must be made applicable through a statute and that section 1983 is the mechanism through which such claims must be pursued; since he cannot be held respon-

sible under section 1983, Plaintiffs' claims for Fourth Amendment violations must fail. He asserts there is no cause of action for a violation of the Tennessee Constitution. He argues that under the facts he has no liability for sexual discrimination since both men and women were searched, and he and his employees played no part in deciding how the searches were conducted. Lastly, he argues the common law causes of action for intentional torts are barred by the exclusive remedy provisions of the Tennessee Workers' Compensation Act. Shearin argues he did not dictate or create the policy that led to the alleged acts that took place in the Kimball restaurant. Shearin further argues his business is not liable for the alleged actions of private individuals (*See generally* Court File No. 71).

Pelham moved for a summary judgment on the following issues;

(1) The Tennessee Human Rights Act,

(2) The alleged violation of the Tennessee Constitution,

(3) Invasion of Privacy,

(4) 42 U.S.C. § 1985,

(5) Common Law Assault and Battery, and

(6) 42 U.S.C. § 1983.

Pelham contends the alleged events did not create a hostile work environment, no cause of action exists for violations of the Tennessee Constitution, no cause of action for invasion of privacy separate from section 1983 exists, liability under section 1985 is not proper because Plaintiffs failed to allege and prove any racial or gender based animus, Lapshaw actually did the searches and thus she cannot be guilty of assault and battery, and lastly, she is not a state employee and only through a conspiracy theory could she be held responsible under section 1983. Pelham further contends since the evidence is insufficient to show any agreement among the defendants to deprive a discrete minority of federally protected rights, summary judgment should issue for the section 1983 claim.

The Court will consider the arguments of each of these defendants.

## A. *Shoney's*

■ Shoney's argues it is not liable for the actions which took place at the restaurant because it was not the owner or operator of the restaurant and did not have a principal-agent or master-servant relationship with Jess Shearin, Shearin Foods, or Pelham. If this position is correct, then Shoney's is not liable under any of Plaintiffs' causes of action.

■ As a general proposition, a franchisor is not the employer of employees of the franchisee. *Evans v. McDonald's Corp.*, 936 F.2d 1087 (10th Cir.1991); *Armbruster v. Quinn,* 711 F.2d 1332, 1337–38 (6th Cir.1983) (utilizing corporate law doctrines to identify whether a franchisor is the employer of the franchisees employees). Thus, no liability attaches to Shoney's because of its status as the employer of Plaintiffs.

Plaintiffs argue, though, Shoney's should be held vicariously liable on a principal-agent theory (Court File No. 40, p. 2). To determine whether an agency relationship exists, courts look at a number of factors. *Rich Printing Co. v. McKellar's Estate,* 46 Tenn. App. 444, 330 S.W.2d 361, 376 (1959) (citations omitted), outlined the test to determine whether such a relationship exists:

(1) An agency may be defined by the circumstances and by the evidence of the conduct of the parties.

(2) What the agent did with knowledge and approval of his principal is circumstantial evidence of what the agent was authorized to do.

(3) The burden of proof is on the person attempting to establish an agency that the alleged agent was in fact the agent of the alleged principal and was authorized to do the act done.

(4) Whether an agency has been created is to be determined by the relations of the parties as the relations in fact exist under their agreements or acts, whether the parties understand that there is an agency or not.

(5) A principal is bound if an agent acts within his apparent or ostensible authority.

■ Based upon consideration of these factors, the Court finds Shoney's did not hold an agency relationship with Jess Shearin or Shearin Foods. The Tennessee Court of Appeals in *Franklin Distributing Co., Inc., v. Crush Int'l,* 726 S.W.2d 926 (Tenn.Ct.App. 1986) held, following *Rich Printing Co.,* that agency is determined by the facts and circumstances of the case. *Id.* at 930. However, whether the principal retains the right of control over the agent's conduct is a significant factor. *Id.* The Court finds the licensing of a franchise to Shearin by Shoney's is not sufficient control to hold Shoney's liable for the actions of Pelham. The power of the agent is apparent by the power of its principal. *Id.; see also John J. Heirigs v. Exide,* 709 S.W.2d 604 (Tenn.Ct.App.1986). In this case, the power exerted by Shoney's over its agent is only the power to regulate and protect its trademark and service mark. The protection of its trademark and service mark is a necessary duty of a franchisor; to interfere with this duty would unfairly impose liability on the basis of a necessary duty. *See Broock v. Nutri/System, Inc.,* 654 F.Supp. 7 (S.D.Ohio 1986). Plaintiffs, though, are not without a cause of action; they can bring suit against the original tortfeasors and seek their remedy from them. *Brewer v. Monsanto Corp.,* 644 F.Supp. 1267, 1275 (M.D.Tenn.1986).

Plaintiffs asserted Shoney's was liable under a theory of agency for all counts. Plaintiffs have failed to show an agency relationship existed with the requisite control needed to impose liability. Accordingly, the Court will **GRANT** Shoney's motion for summary judgment, dismissing Shoney's as a defendant as to all counts.

## B. *Shearin and Pelham*
### 1. 42 U.S.C. § 1983

■ A plaintiff must prove two essential elements to maintain a cause of action under 42 U.S.C. § 1983. First, plaintiffs must show a person acting "under color of state law" committed the alleged conduct. Second, plaintiffs must show the conduct deprived them of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Russo v. City of Cincinnati,*

953 F.2d 1036, 1042 (6th Cir.1992); *see also Braley v. City of Pontiac*, 906 F.2d 220, 223 (6th Cir.1990) ("Section 1983 does not in itself create any constitutional rights; it creates a right of action for the vindication of constitutional guarantees found elsewhere."). In this case, Plaintiffs assert Frizzell and Lapshaw acted under color of state law and that the other Defendants acted as their agents or in conspiracy with them. Plaintiffs allege these actions violated their Fourth Amendment right to be free from unreasonable searches and seizures and their right to privacy.

■ A private party's action in compliance with a statute is not sufficient to justify a characterization of that party as a "state actor." *Id.* at 225. However, "private persons, jointly engaged with state officials in the prohibited action, are acting 'under color' of law for purposes of section 1983 ... It is enough that the defendant is a willful participant in joint activity with the State or its agents." *United States v. Price*, 383 U.S. 787, 794, 86 S.Ct. 1152, 1157, 16 L.Ed.2d 267 (1966). Hence, Pelham may be liable to the Plaintiffs for her actions if it can be shown that she, as a private person, acted in concert with a government agent. *See United States v. Jacobsen*, 466 U.S. 109, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984); *Aikins v. Cardwell*, 488 F.2d 977 (9th Cir.1974). If Pelham's actions were private actions, however, Plaintiffs will have no cause of action under the Fourth Amendment. Also, Shearin may be liable only if he, as an employer, was responsible for the search and the search occurred under the aegis of the government. *Kelly v. Mercoid Corp.*, 776 F.Supp. 1246 (N.D.Ill.1991); *United States v. Bloom*, 450 F.Supp. 323 (E.D.Pa.1978).

■ If Shearin and Pelham are not "state actors" as explained above, then the section 1983 claim against them must be dismissed for failure to state a claim. *See Kentucky v. Graham*, 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *Adams v. Metiva*, 31 F.3d 375 (6th Cir.1994); *Azar v. Conley*, 456 F.2d 1382 (6th Cir.1972).

The Plaintiffs alleged Pelham acted in concert with Frizell, Lapshaw, and the Kimball police department. Shearin is involved in this case through the overt actions taken by Frizzell and Lapshaw as the alleged action of Pelham.

■ Regarding defendant Pelham, the record provides evidence which suggests she, along with Frizzell and Lapshaw, participated in the alleged prohibited action (Court File No. 81). Thus, there is a dispute of fact as to this claim. Accordingly, the Court will **DENY** the motion for summary judgment as to the section 1983 claim against Pelham.

■ However, there is no evidence indicating Shearin was responsible for the search, nor does the record suggest that he was, in any way, acting as an agent of the government. As stated earlier, Shearin was not aware of the actions as they took place. The section 1983 claim against Shearin is based solely on his status as the employer of Pelham and the owner of the restaurant. Because liability under section 1983 may not be based on principles of *respondeat superior* alone, no reasonable interpretation of the facts, even when viewed generously in favor of Plaintiffs, could sustain a version that would allow Plaintiffs to meet their burden in this case as to Shearin. *Polk Co. v. Dodson*, 454 U.S. 312, 325, 102 S.Ct. 445, 453–54, 70 L.Ed.2d 509 (1981); *Beddingfield v. City of Pulaski*, 861 F.2d 968, 971 (6th Cir.1988). For this reason, the Court will **GRANT** the summary judgment motion as to the section 1983 claims against Shearin.

### 2. 42 U.S.C. § 1985

■ Plaintiffs assert a claim against the defendants under 42 U.S.C. § 1985. To assert a section 1985 claim, a plaintiff must show a conspiracy to deprive the plaintiff of equal protection, or equal privileges and immunities, in the furtherance of the conspiracy, and the plaintiff must show an injury resulting from this conspiracy. *See Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971), *Tilton v. Richardson*, 6 F.3d 683 (10th Cir.1993); *see also Volunteer Medical Clinic, Inc. v. Operation Rescue*, 948 F.2d 218 (6th Cir.1991). To establish a violation of section 1985, a plaintiff must show an act of conspiracy which has the purpose of depriving a person of a protected

privilege. *Haston v. Galetka,* 799 F.Supp. 1129 (D.Utah 1992). The plaintiffs must also show a conspiracy existed between the defendants to bring a section 1985 claim.

■ In *Tilton v. Richardson,* the court held that section 1985 applies to conspiracies motivated by "some racial or otherwise class based animus." *Tilton,* 6 F.3d at 686. The court further determined that the class-based animus has been "narrowly construed and does not reach, for example, conspiracies motivated by an economic or commercial" basis. *Id.* The court added that to prove a section 1985 claim that is non-racially motivated, a plaintiff must show a conspiracy motivated by a class-based animus. *Id.* Additionally, a plaintiff must show that the conspiracy is motivated toward interfering with the protected private and public rights of that particular class.

■ Plaintiffs have failed to show Pelham or Shearin discriminated against a specific class. Plaintiffs based their claims on the premise that the search was gender-based discrimination; however, the evidence offered by both sides shows that the employees detained and searched were both male and female. This fact discredits the argument Plaintiffs were discriminated against because of gender. Plaintiffs also failed to show a conspiracy by Defendants to deprive a particular racial group or class of a privilege or immunity. Consequently, the Court will **GRANT** the summary judgment motion as to section 1985 claims against Defendants.

### 3. Sexual Harassment under the Tennessee Human Rights Act

Employment related sexual harassment claims arise under *Tenn.Code Ann.* § 4–21–101, *et seq.* The Tennessee Human Rights Act (THRA) prohibits discrimination in employment, public accommodations, and other areas. Tennessee courts have held that the THRA is designed to extend federal discrimination laws. *Stalsworth v. Dixie Cement Company,* No. 1390, 1991 WL 51401 (Tenn. Ct.App.1991). The complaint alleges the defendants were discriminatory in their conduct towards the plaintiffs. Specifically, Plaintiffs argue Pelham was discriminatory in her detention of the employees, Pelham and the

officers conducted a search in a discriminatory manner and Shearin is vicariously liable for those actions. Plaintiffs further allege Defendants' actions created a sexually hostile environment.

■ The threshold question in a sex discrimination case is whether the alleged adverse treatment falls under the protection of the anti-discrimination statutes. *Stalsworth,* 1991 WL 51401, at *3. The question before the Court is whether the allegations presented by the plaintiffs violate the THRA, which provides, in pertinent part:

> Employer Practices.—(a) It is discriminatory practice for an employer to:
>
> (2) Limit, segregate or classify an employee or applicants for employment in any way which would deprive or tend to deprive an individual of employment opportunities or otherwise adversely affect the status of an employee, because of race, creed, color, religion, sex, age or national origin.

Tenn.Code Ann. § 4–21–401(2).

■ A plaintiff must first make a *prima facie* case of sex discrimination. To make a *prima facie* case, a plaintiff must show he or she was (1) a member of a protected class; (2) discharged or otherwise a victim of an adverse employment action; (3) qualified for the position; and (4) replaced by a person outside of the protected class. *Texas Dep't. of Community Affairs v. Burdine,* 450 U.S. 248, 253 & n. 6, 101 S.Ct. 1089, 1093–94 & n. 6, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582 (6th Cir.1992). If the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to show the action was taken for a legitimate, nondiscriminatory reason. *St. Mary's Honor Ctr. v. Hicks,* —— U.S. ——, ——, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993); *Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094. The plaintiff must then show the alleged legitimate reason was only a pretext to the discriminatory animus behind the action. *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095.

■ Title VII is the primary federal legislation creating a cause of action for sex discrimination in the workplace. Title VII, as well as the THRA, utilizes the word "employer" within its definition of suable entities. Under Title VII, employers are liable for the supervisory actions of managerial and other personnel under *respondeat superior. Miller v. Maxwell's Int'l, Inc.,* 991 F.2d 583, 588 (9th Cir.1993). However, individual supervisory employees cannot be held liable under Title VII. *Miller,* 991 F.2d at 587. If Title VII does not impose individual liability, neither does the THRA. *Tenn.Code Ann.* § 4–21–102(4). Hence, Plaintiffs have no cause of action against Pelham.

■ Plaintiffs allege, however, that Defendants conspired to sexually discriminate against them; yet the affidavits show males and females were searched. Upon examination of the affidavits and depositions of the parties, it is clear the alleged adverse treatment does not fall under the protection of the anti-discrimination statutes as required by *Stalsworth v. Dixie Cement Company.* The THRA covers actions that discriminate against a group, race, or gender. The facts alleged here show adverse treatment against everyone present, regardless of gender, race, or any other factor. Such action is not discriminatory within the meaning of the THRA. The proof offered by Plaintiffs fails to show Shearin had knowledge of, or implemented a policy of, strip-searching female employees and detaining them under such circumstances. Accordingly, the Court will **GRANT** the summary judgment motions as to the sex discrimination claim against Pelham and Shearin.

The Court also notes there is nothing in the record establishing a claim of a sexually hostile work environment. There are no facts which suggest pervasive and regular sex-based conduct directed toward Plaintiffs. Consequently, the Court will **GRANT** the summary judgment motions of the defendants regarding a sexually hostile work environment.

9. Under the present law, such claims are "supplemental jurisdiction claims," 28 U.S.C. 1367. However, since Plaintiffs referred to them as

### 4. Pendent State Law Intentional Tort Claims

Plaintiffs also petitioned the court to accept their pendent [9] state law claims against the defendants. The claims are:

(1) Tennessee Constitutional claim of invasion of privacy,

(2) False Imprisonment,

(3) Intentional Infliction of Emotional distress, and

(4) Assault and Battery.

#### a. Invasion of Privacy

■ First, the Court will address the invasion of privacy claim against the defendants. Privacy rights are protected under the Tennessee Constitution, Article 1, § 7. This section is identical in intent and purpose to the United States Constitution, Amend. 4. Tennessee courts have recognized this duplicative intent and have used federal cases as well as state cases to interpret the privacy clause of the Tennessee Constitution. *See Sneed v. State,* 221 Tenn. 6, 423 S.W.2d 857 (1968); *State v. Meadows,* 745 S.W.2d 886 (Tenn.Ct.App.1987).

In the complaint, Plaintiffs allege the actions of Pelham, Frizzell and Lapshaw amounted to unlawful searches of their persons and property and these Defendants are directly liable for their actions. Plaintiffs allege Shearin and the City of Kimball are vicariously liable for the actions of their respective employees.

■ The Constitution confers no independent right to sue. Title 42 U.S.C. § 1983 is one mechanism by which violations of the Fourth Amendment may be vindicated. The Court has thoroughly analyzed the section 1983 claims of the Plaintiffs against Defendants Pelham and Shearin; therefore, this Court will **GRANT** summary judgment to the Defendants on this claim as it stands independent of the section 1983 cause of action brought by the plaintiffs.

"pendent claims," the Court will retain that designation.

### b. False Imprisonment

Second is the false imprisonment issue. Only Defendant Shearin moved for summary judgment as to this claim. Angie Pelham's motion for summary judgment did not address this allegation.

False imprisonment is the intentional restraint or detention of another without just cause. *Newsom v. Thalhimer Brothers, Inc.*, 901 S.W.2d 365, 367–68 (Tenn. Ct.App.1995); *Brown v. SCOA Indus., Inc.*, 741 S.W.2d 916, 919 (Tenn.Ct.App.1987). The elements of false imprisonment are the restraint of a person against his will and the unlawfulness of that restraint. *Coffee v. Peterbilt of Nashville, Inc.*, 795 S.W.2d 656, 659 (Tenn.1990); *Newsom*, 901 S.W.2d at 367–68. Regarding employers, the rule for false imprisonment, as well as other intentional torts within Tennessee, was clearly articulated by the Tennessee Supreme Court in *Loveman v. Bayless*, 128 Tenn. 307, 160 S.W. 841 (1913):

> When a master is sued solely for misfeasance, or nonfeasance, on the part of his servants, being liable for their conduct only under the doctrine of respondeat superior, a verdict, permitted to stand in favor of such servants ... entitles the master to a discharge from such claimed liability. *Id.* 160 S.W. at 842.

*See also McInturff v. White*, 565 S.W.2d 478 (Tenn.1976). An employer cannot be held liable for the tortious actions of an employee. The Tennessee Supreme Court has also held with respect to the intentional torts of one employee against another employee, an employer cannot be held liable for such actions unless the employer intended the tortious conduct to occur. *Williams v. Smith*, 222 Tenn. 284, 435 S.W.2d 808, 810 (1968).

Although Angie Pelham failed to address this claim in her motion for summary judgment, the Court observes there is enough evidence in the record to present a genuine issue of fact with respect to this claim against Ms. Pelham.

However, because there is no evidence indicating Jess Shearin intended the alleged tortious acts of Angie Pelham, the Court will **GRANT** his summary judgment motion as to this claim.

### c. Intentional Infliction of Emotional Distress

Third, Plaintiffs have alleged Defendants conspired to and intentionally inflicted grievous emotional and mental distress upon them. The Plaintiffs also alleged Pelham is directly liable, and Shearin vicariously liable, under *respondeat superior* for intentional infliction of emotional distress. To recover damages for the intentional infliction of emotional distress, Plaintiffs must show Defendants intentionally or recklessly inflicted severe emotional distress by outrageous conduct, which is also willful and wanton misconduct. *See Gann v. Key*, 758 S.W.2d 538 (Tenn.1988). Plaintiffs must show conduct consisting of acts or words spoken directly to the injured party. *Id.* at 546.

Angie Pelham does not address this issue in her motion for summary judgment; therefore, in light of the evidence presented by the record, a genuine issue of fact remains regarding the intentional infliction of emotional distress claim against Pelham.

However, as mentioned above, an employer cannot be held liable for the tortious conduct of one employee against another, unless the employer intended the tortious conduct. Consequently, there must be evidence demonstrating that Jess Shearin directly intended the alleged tortious conduct of Angie Pelham.

The Plaintiffs wish to hold Mr. Shearin liable based solely on his status as Pelham's employer; the Plaintiffs do not present any evidence of conduct on the part of Jess Shearin which could substantiate an emotional distress claim. Accordingly, this Court will **GRANT** Defendant Shearin's motion for summary judgment as to the claim of intentional infliction of emotional distress.

### d. Assault and Battery

Fourth, Plaintiffs argue Pelham is liable for the common law tort of assault, as well as battery, and, under the doctrine of *respondeat superior*, Shearin is liable for any assault perpetrated by Pelham.

An assault is defined as "... an intentional attempt, or the unequivocal appearance of an intentional attempt, coupled with the present ability, or the unequivocal appearance of the present ability, to do harm to the person of another." T.P.I. CIVIL § 8.01 (Appendix 12). The record provides enough evidence to support the claims of assault presented by Donna Raines; however, there is nothing in the record which suggests the other Plaintiffs may have been assaulted by Defendant Pelham. The only semblance of evidence supporting the assault claim by the other Plaintiffs against Pelham is the affidavit of Brenda Billingsley which states, "... Angie Pelham threatened us not to file a lawsuit. She told me that there would be some 'ass whippings' if a lawsuit was filed" (Court File No. 80). Although a threat of harm to the person of another, this statement does not suggest the immediacy of harm necessary to constitute an assault. Therefore, Angie Pelham is entitled to partial summary judgment regarding this claim; there is a genuine issue of fact concerning the assault claim of Donna Raines only.

A "battery" is "any intentional, unlawful and harmful (or offensive) contact by one person with the person of another." T.P.I. CIVIL § 8.02 (Appendix 16). The only evidence of any form of contact between Angie Pelham and the Plaintiffs is Donna Raines' statement that Defendant Pelham "grabbed [Raines] by the arm and physically pulled [her] into [Pelham's] office" (Court File No. 81). All other Plaintiffs testified Angie Pelham did not touch them. Accordingly, this Court will **GRANT** partial summary judgment to Defendant Pelham. With the exception of Donna Raines, the Plaintiffs' cause of action for battery is dismissed.

*Respondeat superior* holds an employer vicariously liable for the torts of its employees while they are acting within the scope of employment. *Insurance Co. of North Am. v. Federated Mut. Ins. Co.*, 518 F.2d 101, 103 (6th Cir.1975); *Tennessee Farmers Mut. v. American Mut.*, 840 S.W.2d 933, 937 (Tenn.Ct.App.1992). Therefore, to hold Shearin liable, Raines must show an assault and battery occurred and it occurred while Pelham was acting within the scope of her employment. *Tennessee Farmers Mut.*, 840 S.W.2d at 937. However, a corporate employer can use the shield of workers compensation exclusivity to protect himself from liability if the plaintiff sues the tortfeasor himself for a remedy. *Williams v. Smith*, 222 Tenn. 284, 435 S.W.2d 808 (1968). The facts demonstrate that Angie Pelham was acting within the scope of her employment when the alleged acts took place. Also, Donna Raines' suit against Pelham provides an adequate remedy. Consequently, Jess Shearin is shielded by Tennessee's workers compensation law from liability as to the assault and battery claims against him. The motion for summary judgment as to these claims will be **GRANTED.**

## V. CONCLUSION

In conclusion, this Court will **GRANT** Shoney's motion for summary judgment and Jess Shearin's motion for summary judgment as to all claims and will dismiss them from this lawsuit. Furthermore, this Court will **GRANT in part** and **DENY in part** Angie Pelham's motion for summary judgment. The Plaintiffs' claims of intentional infliction of emotional distress and false imprisonment against Defendant Pelham remain, but as to the assault and battery claims against Angie Pelham, all claims are dismissed with the exception of those raised by plaintiff Donna Raines. All other claims against Pelham are dismissed.

An Order will enter.