IN THE COURT OF APPEALS OF TENNESSEE
AT MEMPHIS
January 22, 2008 Session

**DWIGHT BARBEE, as Administrator of the Estate of Faye Glenn
v.
KINDRED HEALTHCARE OPERATING, INC.; KINDRED
HEALTHCARE, INC.; KINDRED NURSING CENTERS EAST,
LLC; KINDRED HOSPITALS LIMITED PARTNERSHIP;
KINDRED NURSING CENTERS LIMITED PARTNERSHIP
d/b/a RIPLEY HEALTHCARE AND REHABILITATION CENTER;
NELLIE WILSON, in her capacity as Administrator of Ripley
Healthcare and Rehabilitation Center; N. JEANNETTE McKINION, in her
capacity as Administrator of Ripley Healthcare and Rehabilitation Center;
and JONATHAN OWENS, in his capacity as Administrator of Ripley
Healthcare and Rehabilitation Center**

Appeal from the Circuit Court for Lauderdale County
No. R.D. 5978   Joseph H. Walker, III, Judge

No. W2007-00517-COA-R3-CV - Filed October 20, 2008

This is a nursing home negligence case involving an arbitration agreement.  The son of the decedent signed documents admitting his mother to the defendant nursing home.  The admission documents included an arbitration agreement.  After his mother's death, the son filed a lawsuit on behalf of her estate against the defendant nursing home, alleging, *inter alia*, neglect and abuse.  The nursing home filed a motion to dismiss the lawsuit and compel arbitration under the agreement. The trial court granted the motion, finding that the agreement was not unconscionable and that the son had apparent authority to sign the agreement in view of his mother's incompetence and the exigent circumstances.  The mother's estate appeals.  We find on appeal that the son was not his mother's agent and did not have apparent authority to sign on her behalf.  Applying the Tennessee Health Care Decisions Act, we find further that the son was not his mother's surrogate, and that he did not have authority to bind her to the arbitration agreement.  Therefore, we reverse the order compelling arbitration.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Reversed
and Remanded**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which, ALAN E. HIGHERS, P.J., W.S., joined; W. FRANK CRAWFORD, J., did not participate.

Susan Nichols Estes, Deborah Truby Riordan, Cameron C. Jehl, Little Rock, AR; Brian G. Brooks, Greenbrier, AR, for the Appellant.

W. Lee Maddux and T. Ryan Malone, Chattanooga, TN, for the Appellees.

## OPINION

### FACTS AND PROCEDURAL HISTORY

In the spring of 2004, Faye Glenn ("Decedent") lived alone in Ripley, Tennessee. Her only child, son Dwight Barbee ("Barbee"), lived in Memphis, and assisted his mother with financial matters by paying her bills and handling other transactions. Plaintiff/Appellant Barbee did not have a power of attorney or other written authorization from his mother to act on her behalf.

In June 2004, the Decedent was diagnosed with colon cancer and underwent colon surgery in Memphis. She did not fare well after her surgery, and her health care providers recommended that the Decedent be admitted to a nursing home. On July 8, 2004, the Decedent was admitted to Defendant/Appellee Ripley Healthcare and Rehabilitation Center ("Ripley") in Lauderdale County, Tennessee, operated by Defendant/Appellees Kindred Healthcare Operating, Inc., Kindred Healthcare, Inc., Kindred Nursing Center East, LLC, and Kindred Hospitals Limited Partnership.

The 42-page Resident Admissions Agreement ("Agreement") admitting the Decedent into Ripley was executed by Barbee on July 8, 2004. Part of the overall Agreement executed by Barbee was an eight-page Alternative Dispute resolution Agreement ("Arbitration Agreement") in which Barbee, on the Decedent's behalf, agreed to have all disputes arising out of the Decedent's stay at Ripley submitted to binding arbitration, and waiving the Decedent's right to a jury trial. The Arbitration Agreement had a separate signature page, executed by Barbee, which included the following paragraph:

### IV. RESIDENT'S UNDERSTANDING OF AGREEMENT

The Resident understands that (A) he/she has the right to seek legal counsel concerning this Agreement, (B) the execution of this Agreement is not a precondition to the furnishing of services to the Resident by the Facility, and (C) this Arbitration Agreement may be revoked by written notice to the Facility from the Resident within thirty (30) days of signature. If not revoked within thirty (30) days, this Agreement shall remain in effect for all care and services rendered at the Facility, even if such care and services are rendered following the Resident's discharge and readmission to the Facility. (D) Nothing in this Agreement shall prevent Resident or any other person from reporting alleged violations of law to the appropriate administrative, regulatory or law enforcement agency. The Resident, or his or her designated legal representative, also had the opportunity to consult with the Facility representative regarding such explanations or clarification.

The Decedent remained a resident at Ripley until October 3, 2004, during which time she suffered from a variety of injuries and ailments. The Decedent died on October 7, 2004. After the Decedent's death, Barbee became the administrator of her estate ("Estate").

On June 28, 2005, the Estate filed this lawsuit in the trial court below against the companies that owned and operated Ripley, namely, Kindred Healthcare Operating, Inc.; Kindred Healthcare, Inc.; Kindred Nursing Center East, LLC; Kindred Hospitals Limited Partnership; Kindred Nursing Centers Limited Partnership d/b/a Ripley Healthcare and Rehabilitation Center; and Nellie Wilson, in her capacity as Administrator of Ripley Healthcare and Rehabilitation Center. On October 6, 2005, the Estate filed an amended complaint adding two additional defendants: N. Jeannette McKinion, in her capacity as Administrator of Ripley Healthcare and Rehabilitation Center, and Jonathan Owens, in his capacity as Administrator of Ripley Healthcare and Rehabilitation Center (collectively, "Kindred" or "Kindred Defendants"). The Complaint alleged that Ripley and the Kindred Defendants negligently breached their duty to ensure that the Decedent received appropriate care and supervision, violated the Tennessee Adult Protection Act,[1] committed medical malpractice, and breached their contractual duties, resulting in injuries and pain and suffering to the Decedent, and ultimately resulting in her wrongful death. The complaint alleged that, at all times during her residence from July 8, 2004 through October 3, 2004, the Decedent was "of unsound mind" within the meaning of Tennessee Code Annotated § 28-1-106, which provides for the tolling of the statute of limitations for persons who are "of unsound mind." T.C.A. § 28-1-106 (2000). The Estate sought both compensatory and punitive damages, and a trial by jury. Discovery ensued.

In August 2005, the Kindred Defendants filed a motion to dismiss, or, in the alternative, for summary judgment and to stay all proceedings, including discovery. A subsequent, identical motion was filed in November 2005, after the Estate filed an amended Complaint. Both motions filed by the Kindred Defendants sought to enforce the Arbitration Agreement executed by Barbee in connection with the Decedent's admission to Ripley.

In September 2005, the Estate filed a response to the Kindred Defendants' motion. In its response, the Estate denied the existence of a valid arbitration agreement and asked that discovery relating to the issues of the Kindred Defendants' motion be completed before the trial court made a decision on the motion. In October 2005, the trial court entered an agreed order permitting arbitration-related discovery.

After the arbitration-related discovery had been completed, the trial court held a hearing on the Kindred Defendants' motions on September 18, 2006. Although there was no testimony at the hearing, discovery such as depositions and interrogatory responses were included in the file before the trial court. The trial judge heard and considered the arguments of counsel.

At the hearing, it was undisputed that the Decedent had not executed any written document, such as a power of attorney, authorizing Barbee to act on her behalf. Barbee had never received

---

[1]T.C.A. § 71-6-101 *et seq*. (2004 & Supp. 2007).

authorization from any court, as in a conservatorship or a guardianship. In support of the motions, the Kindred Defendants argued that Barbee had apparent authority to act as the Decedent's agent, noting that he was her only child and had handled many of her financial obligations, and had her admitted to the hospital prior to her residency at Ripley. They also contended that there were "exigent circumstances," such as the Decedent's inability to handle her own affairs, that gave Barbee the apparent authority to execute the nursing home admission documents on behalf of the Decedent, including the Arbitration Agreement. The Kindred Defendants maintained that the Arbitration Agreement was not unconscionable; it bound both parties equally, it stated clearly that it did not have to be signed in order for the Decedent to be admitted, and it included a clause saying that it could be revoked within thirty days of execution. Therefore, they argued, the Estate's complaint should be dismissed and its claims arbitrated.

The Estate argued that there were no exigent circumstances, as execution of the Arbitration Agreement was not necessary for the Decedent to be admitted to Ripley. It noted that the Kindred Defendants had the burden of showing that the Arbitration Agreement was executed by a person with authority to act on the Decedent's behalf, and maintained that such authority had not been shown. The fact that Barbee had in the past taken actions such as handling the Decedent's financial matters did not matter because apparent authority had to stem from actions of the principal that cloaked the person in question with apparent authority. The Decedent, the Estate argued, had not done so and could not have done so because she was incompetent at the time she was admitted. Thus, the Estate contended, the Arbitration Agreement should not be enforced. The trial court took the matter under advisement.

On January 26, 2007, the trial court entered an Order dismissing the Estate's complaint, and compelling the parties to arbitration under the Arbitration Agreement. The Order provides:

> Mr. Barbee filed suit against defendants in June 2005. Defendants filed a motion to dismiss/summary judgment alleging the claim is subject to the Agreement requiring mediation. If mediation is unsuccessful, the Agreement requires arbitration. The defendants therefore allege the suit should be dismissed.
> Plaintiff asserts that the Agreement is unenforceable. Plaintiff alleges the signatory lacked requisite authority; that the Agreement is illegal and unconscionable.
> * * *
> Under this Agreement, the services are not offered on a "take it or leave it" basis, without affording the consumer a realistic opportunity to bargain and under such conditions that the consumer cannot obtain the desired product or service except by acquiescing to the form of the contract. The provisions expressly state that services do not depend on signing, and gives the signor thirty days to revoke the agreement.
> The signing of the Agreement was not a condition precedent to the admission of Ms. Glenn. She was already in the facility before Mr. Barbee signed the Agreement. The Agreement provides a realistic opportunity to withdraw from the provisions.

The Court finds that Mr. Barbee had a choice of whether to sign the Agreement. The terms of the Agreement apply to both parties. Mr. Barbee had meaningful choice, and the contract terms are not unreasonably harsh. The Court finds that the Agreement was neither procedurally nor substantively unconscionable.

**Signatures:** Mr. Barbee asserts he had no express authority to sign for his mother. At issue is whether the defendants can rely upon the concept of apparent authority.

The facts established that he was her only child and sole heir. He already had a deed to her house, which had been placed in his name. He was on her checking and savings accounts. He wrote checks and paid the bills at times.

The evidence reflects that Ms. Glenn did not have her mental faculties, and was not in a position to indicate whether she assented to the terms of these contract provisions. She was not entirely aware of the pending transfer from the hospital to nursing home, and Mr. Barbee was unsure whether she understood she was being placed into a nursing home at the time of admission.

Mr. Barbee had signed his mother into the hospital in Ripley and the hospital in Memphis. He signed all relevant admission papers at both of those service providers, and for her admission to the defendant facilities.

The Court finds that exigent circumstances required Mr. Barbee to act for his mother. She could not act in her own behalf, and could not make decisions. She could not handle her financial affairs, and he had taken over all her business decisions. He had control over her property and accounts. Mr. Barbee had apparent authority to act in her behalf, and defendants were justified in relying on his signing the Agreement. As his mother's sole heir, he is the only person affected by his signing for his mother. He is bound by his own signature in that respect.

\* \* \*

The Court therefore grants the Motion of defendants dismissing the action and compel[s] the parties to submit to the alternate dispute resolution in accordance with the terms of the Agreement.

Thus, the trial court concluded that "exigent circumstances" vested Barbee with apparent authority to execute the Arbitration Agreement on his mother's behalf, and that the Arbitration Agreement was not unconscionable. Consequently, the trial court's order compelled arbitration. From this order, the Estate now appeals.

### ISSUES ON APPEAL AND STANDARD OF REVIEW

On appeal, the Estate raises five issues:

> 1. Whether the trial court erred in finding the Decedent to be incompetent when no medical evidence to support that finding was presented.

2. Whether the trial court erred in finding that exigent circumstances vested in Barbee apparent authority to bind his mother to the Arbitration Agreement, when the Arbitration Agreement was not required for his mother's admission to Ripley and he had not previously exercised similar authority.

3. Whether the trial court erred in finding that the Arbitration Agreement was not unconscionable.

4. Whether the trial court erred in finding that the Kindred Defendants did not breach their fiduciary duty to the Decedent.

5. Whether the failure of essential terms, here, the designation of the arbitral forum and rules of procedure, prevents the Arbitration Agreement from being enforceable.

Here, the Kindred Defendants sought enforcement of the Arbitration Agreement by a motion for summary judgment, asking for dismissal of the complaint. The trial court considered not only the pleadings, but also the depositions and other discovery in dismissing the action and compelling arbitration. The fact that the trial court considered matters outside the scope of the pleadings did "not convert the motion to compel arbitration into a motion for summary judgment." *Raines v. Nat'l Heath Corp.*, No. M2006-1280-COA-R3-CV, 2007 WL 4322063, at *4 (Tenn. Ct. App. Dec. 6, 2007). "[A] proper motion to compel arbitration is not even a true motion to dismiss." *Id.* (citing *Thompson v. Terminix Int'l Co.*, No. M2005-02708-COA-R3-CV, 2006 WL 2380598, at *3 (Tenn. Ct. App. Aug. 16, 2006)). "The correct procedure to be followed by the trial court upon a motion to compel arbitration, therefore, is, if it determines the matter is subject to arbitration, to enter an order compelling arbitration of that matter and staying the matter." *Id.* (quoting *Thompson*, 2006 WL 2380598, at *3). We review the enforcement of an arbitration agreement *de novo*. *Rosenberg v. BlueCross BlueShield of Tenn., Inc.*, 219 S.W.3d 892, 903 (Tenn. Ct. App. 2006) (citing *Cooper v. MRM Inv. Co.*, 367 F.3d 493, 497 (6th Cir. 2004)). A presumption of correctness is afforded to the trial court's findings of fact, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *T.R. Mills Contractors, Inc. v. WRH Enter., LLC*, 93 S.W.3d 861, 864 (Tenn. Ct. App. 2002). However, there is no presumption of correctness afforded to a trial court's conclusions of law. *T.R. Mills Contractors, Inc.*, 93 S.W.3d at 864 (citations omitted).

## ANALYSIS

### Decedent's Competence

We consider first the Estate's argument that the trial court erroneously found that the Decedent was incompetent to execute Ripley's admission documents, including the Arbitration Agreement, at the time she was admitted. As noted above, to support its finding of "exigent circumstances," the trial court found that the Decedent "did not have her mental faculties" and "was not in a position to indicate whether she assented to the terms of these contract provisions." It noted that, at the time the Decedent was being admitted, she "was not entirely aware" that she was leaving the hospital and being placed into a nursing home.

The Kindred Defendants argue strongly that the facts show that the Decedent was incompetent and lacked the capacity to contract. From our review of the record, the trial court's findings are supported by admissions by the Estate and by Barbee. The complaint affirmatively alleges that the Decedent was "of unsound mind" and "unable to attend to her affairs" on July 8, 2004, the date on which the Arbitration Agreement was signed. Barbee testified in his deposition that the Decedent "wasn't really capable of knowing what was going on a lot" and was "not really" aware that she was going to be transferred to Ripley. This mirrors the trial court's conclusion. Thus, regardless of whether the trial court had expert medical testimony on the Decedent's mental condition at the time the Arbitration Agreement was executed, its findings were fully supported by admissions by Barbee and by the Estate.

**Agency**

The Estate next argues that the trial court erred in finding that, in light of "exigent circumstances," Barbee had apparent authority to act on the Decedent's behalf to execute the Arbitration Agreement. Whether exigent circumstances may vest a putative agent with apparent authority is a question of law.

At the outset, we must briefly examine some basic concepts. The common law of agency "attributes the legal consequences of one person's action to another person." RESTATEMENT (THIRD) OF AGENCY ch. 2, Introductory Note (2006). The RESTATEMENT notes that "[r]elationships of agency are among the larger family of relationships in which one person acts to further the interests of another and is subject to fiduciary obligations." *Id.* § 1.01, cmt. g. Unlike some other fiduciary relationships, in an agency, the principal has the power to terminate the authority of the agent. *Id.* A common-law agency arises when the principal assents for the agent to act on the principal's behalf, and the agent agrees. *Id.* § 1.01, cmt. c. A person who is not in a mental condition to contract is not competent to appoint an agent for the purpose of contracting. 3 AM. JUR. 2D *Agency* § 11 (2002). An agency relationship is created only "at the will and by the act of the principal and its existence is a fact to be proved by tracing it to some act of the alleged principal and turns on facts concerning the understanding between the alleged principal and agent." *Id.* § 15.

Two bases under which the common law attributes the legal consequences of the agent's actions to the principal are actual authority and apparent authority.[2] RESTATEMENT (THIRD) OF AGENCY ch. 2, Introductory Note (2006). The RESTATEMENT includes implied authority under the auspices of actual authority. The term "implied authority" is typically used to denote actual authority either to do what is necessary to accomplish the agent's express responsibilities, or to act in a manner that the agent reasonably believes the principal wishes the agent to act, in light of the principal's objectives and manifestations. *Id.* § 2.01 cmt. b.

---

[2]As a third basis, the RESTATEMENT also includes *respondeat superior*, which is not applicable in this case. RESTATEMENT (THIRD) OF AGENCY ch. 2, Introductory Note (2006).

Here, the trial court found that Barbee had "apparent authority" to act on behalf of his mother. In general, apparent authority is the power held by the putative agent "to affect a principal's legal relations with third parties when a third party reasonably believes the [putative agent] has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations." *Id.* § 2.03. In Tennessee, apparent authority has been described as:

> (1) such authority as the principal knowingly permits the agent to assume or which he holds the agent out as possessing;
> (2) such authority as he appears to have by reason of the actual authority which he has;
> (3) such authority as a reasonably prudent man, using diligence and discretion, in view of the principal's conduct, would naturally suppose the agent to possess.

*Franklin Distrib. Co. v. Crush Intern. (U.S.A.), Inc*., 726 S.W.2d 926, 930–31 (Tenn. Ct. App. 1986) (citing *V.L. Nicholson Co. v. Transcon Inv. & Fin. Ltd.,* 595 S.W.2d 474, 483 (Tenn. 1980); *S. Ry. Co. v. Pickle,* 197 S.W. 675, 677 (Tenn. 1917); *Hart v. First Nat'l Bank of Memphis,* 690 S.W.2d 536, 539 (Tenn. Ct. App. 1985); *Rich Printing Co. v. Estate of McKellar,* 330 S.W.2d 361, 376 (Tenn. Ct. App. 1959); *Rural Educ. Ass'n v. Bush,* 298 S.W.2d 761, 766 (Tenn. Ct. App. 1956)). We note that "a principal is responsible for the acts of an agent within his apparent authority only where the principal himself by his acts or conduct has clothed the agent with the appearance of authority, and not where the agent's own conduct has created the apparent authority." *S. Ry. Co.,* 197 S.W. at 677. The burden is on the claimant to show the authority of the agent. *John J. Heirigs Const. Co. v. Exide*, 709 S.W.2d 604, 608 (Tenn. Ct. App. 1986).

In the instant case, the Estate contends that Barbee did not have the authority to waive the Decedent's right to a jury trial, and that the trial court erred in finding otherwise. Further, the Estate argues that exigent circumstances, as cited by the trial court, do not exist in this case. Ripley concedes that Barbee did not have express authority to act on the Decedent's behalf, but contends that the Decedent's incompetency and the absence of anyone with express authority to act on her behalf should be deemed as sufficient exigent circumstances to clothe Barbee with authority to act on the Decedent's behalf. As proof of apparent authority, Ripley cites to the fact that Barbee is the Decedent's only child, Barbee's care for the Decedent and payment of her bills, Barbee's execution of documents on her behalf, and Barbee's consent to the Decedent's placement in Ripley.

In this case, Barbee testified that at the time he signed the Ripley admission papers he did not have a power of attorney, and had not been appointed as either a guardian or a conservator for his mother. Barbee testified that at the time he executed the Agreement he told the Ripley representative that he did not have power of attorney for his mother. The Kindred Defendants do not dispute Barbee's testimony, and concede that he did not have express authority to act for the Decedent. Moreover, Ripley's Admission Agreement expressly differentiates between those persons with express legal authority to act on behalf of a resident and those without such authority. The Agreement includes a page entitled "Definition of Parties to this Agreement," which has definitions

for potential parties and blanks beside each definition for the parties to fill in their names. Ripley is designated as the "Nursing Center," and the Decedent is designated as the "Resident." The term "Legal Representative" is defined as "the individual or organization name[d] above. This person or group has the legal authority to act on behalf of the Resident. Examples: Conservator, Legal Guardian, person with Power of Attorney." The blank beside this definition is not filled in. In the Agreement, Barbee is designated as the "Financial Agent," that is, the "individual or organization who personally assumes financial responsibility for any part of the Resident's share of costs or liability. The 'Financial Agent' is a third party guarantor of payment."

Recent Tennessee cases involving arbitration agreements executed in connection with admission to a nursing home have focused on the scope of the authority given expressly to the agent by the resident, via either a power of attorney or oral statements. *See Owens v. Nat'l Health Corp.*, No. M2005-01272-SC-R11-CV, 2007 WL 3284669, at *5–6 (Tenn. Nov. 8, 2007) (holding that the power of attorney document authorized the attorney-in-fact to enter into the arbitration agreement on behalf of the principal); *Necessary v. Life Care Ctrs. of Am., Inc.*, No. E2006-00453-COA-R3-CV, 2007 WL 3446636, at *5 (Tenn. Ct. App. Nov. 16, 2007) (holding that because the plaintiff had express authority to sign all of the admission documents, she also had authority to sign the arbitration agreements on the decedent's behalf as one of those admission documents). *But see Hendrix v. Life Care Ctrs. of Am., Inc.*, No. E2006-02288-COA-R3-CV, 2007 WL 4523876, at * 5 (Tenn. Ct. App. Dec. 21, 2007) (holding that the durable power of attorney was not effective at the time of the resident's admission because the resident was still able to make her own medical decisions at the time of admission, thus, daughter's waiver of her mother's right to a jury trial was unenforceable). *See also Thornton v. Allenbrooke Nursing & Rehab. Ctr., LLC*, No. W2007-00950-COA-R3-CV, 2008 WL 2687697 (Tenn. Ct. App. July 3, 2008). Here, of course, there was no express grant of authority from the Decedent to Barbee.

In support of the trial court's finding that Barbee had apparent authority to execute the Arbitration Agreement on behalf of the Decedent, the Kindred Defendants cite an Alabama decision, and argue that a principal can vest a putative agent with apparent authority "by omission as well as commission, and such authority is implied where the principal passively permits the agent to appear to a third person to have authority to act on his behalf." *Perry v. Meredith*, 381 So. 2d 649, 650 (Ala. Civ. App. 1980). They cite another Alabama case that states that the scope of the putative agent's apparent authority can be determined by the authority that the principal held out the agent as possessing or that the principal permitted the agent to represent that he possessed. *Treadwell Ford, Inc. v. Courtesy Auto Brokers, Inc.*, 426 So. 2d 859, 861 (Ala. Civ. App. 1983). The Kindred Defendants further cite *Broughsville v. OHECC, LLC*, No. 05CA008672, 2005 WL 3483777 (Ohio Ct. App. Dec. 21, 2005), in which a mentally competent mother permitted her daughter to execute her admission papers to the defendant nursing home. *Id.* at *2. The documents included an arbitration agreement, and the nursing home resident later argued that her daughter did not have authority to sign it. *Id.* The Ohio court found that the daughter had apparent authority because the mother was present when the documents were executed and "knowingly permitted" her daughter to sign on her behalf. *Id.*

Applying these arguments to the case at bar, the Kindred Defendants note that Barbee was the Decedent's closest living relative, that he had a history of caring for the Decedent, had a joint bank account with her and had written checks to pay her bills, and had signed documents to have her admitted to the hospital for her surgery. The Kindred Defendants characterize Barbee's execution of the Ripley admission documents as a "similar action" to those taken by Barbee in the past on his mother's behalf, with her apparent assent.

We must reject this argument. From our review of the above authorities, it is clear that agency status, via either actual authority or apparent authority, stems from the actions of the *principal*. Apparent authority may be found "only where the principal himself by his acts or conduct has clothed the agent with the appearance of authority." **S. Ry. Co.**, 197 S.W. at 677. **See also Hendrix**, 2007 WL 4523876, at *5; **Thornton**, 2008 WL 2687697, at *5–6. Regardless of the actions the Decedent may have permitted Barbee to take on her behalf in the past, at the time she was admitted to Ripley, she no longer possessed "her mental faculties." This fact could not have been lost on the Ripley representatives who were admitting her to their facility. If the Decedent could no longer "act on her own behalf," how could she have "clothed [Barbee] with the appearance of authority" to act on her behalf? **See Ricketts v. Christian Care Ctr. of Cheatham County, Inc.**, No. M2007-02036-COA-R9-CV, 2008 WL 3833660, at *2 (Tenn. Ct. App. Aug. 15, 2008) (finding that nursing home resident who was not competent when readmitted did not have the ability to give her daughter authority to sign arbitration agreement).

The Kindred Defendants emphasize, and the trial court relied on, "exigent circumstances" to support the finding that Barbee had apparent authority to act on his mother's behalf. Presumably, the "exigent circumstances" were the fact that, as noted in the trial court's order, the Decedent "could not act in her own behalf, and could not make decisions," but needed to be admitted to a skilled care facility such as Ripley.

We find no support in the above authorities for the proposition that apparent authority for a principal/agent relationship can be created by "exigent circumstances," whatever that phrase means in this context. In making this finding, the trial court was apparently referring to a statement by this Court in a case heavily relied upon by the Kindred Defendants, **Raiteri ex rel. Cox v. NHC Healthcare/Knoxville, Inc.**, No. E2003-00068-COA-R9-CV, 2003 WL 23094413 (Tenn. Ct. App. Dec. 30, 2003). In **Raiteri**, Mr. Cox met with the nursing home's admissions coordinator to make arrangements for his wife's admission. **Id.** at *1. Despite the fact that Mrs. Cox was mentally competent, Mr. Cox was asked at the meeting to sign the nursing home's "Admission and Financial Contract" on his wife's behalf. **Id.** After discussing the enforceability of the contract, the Court stated:

> [W]e conclude that the evidence before us preponderates against the trial court's implicit decision that Mr. Cox had authority to sign the admission agreement on behalf of his wife. There is absolutely no evidence that he had her express authority to sign for her. We also hold that the defendant cannot rely upon the concept of apparent authority. The evidence reflects that Mrs. Cox had her mental faculties, was

-10-

"sharper" than her husband, and was otherwise in a position to indicate whether she assented to the terms of these significant contract provisions. *The record is also devoid of any exigent circumstances that would clothe Mr. Cox with apparent authority to bind his wife to the admission agreement, particularly the alternative dispute resolution provisions*. We certainly find nothing in the record before us, either factually or legally, warranting a holding that Mr. Cox had the right to waive his wife's very valuable constitutional right to a jury trial to adjudicate her rights in this matter.

*Id.* at *9 (emphasis added).

From this statement, the Kindred Defendants argue that the **Raiteri** Court held "that exigent circumstances could create an agency relationship." We must note that the **Raiteri** Court's statement was the converse; it merely noted that there were *no* "exigent circumstances" in that case. Regardless, the **Raiteri** Court cited no authority for this statement, and we find none supporting it. Under these circumstances, we must disagree with the trial court's holding that Barbee had "apparent authority" to act as his mother's agent in executing the Arbitration Agreement.[3]

### Tennessee Health Care Decisions Act

How, then, are health care decisions to be made for a person such as the Decedent, who became apparently incapacitated without having designated an agent for such purposes, but nevertheless required immediate medical treatment? No doubt countless health care facilities and providers have relied on the consent of available "next-of-kin," as Ripley did here. Regardless of custom, however, we find no basis in the common law for such next-of-kin to make health care decisions for an incapacitated relative, in the absence of actual or apparent authority as the patient's agent. Recognizing this recurring problem, Tennessee enacted the Tennessee Health Care Decisions Act, which "fills a long-standing gap in Tennessee law on health care surrogacy."[4] *See* T.C.A. § 68-11-1801 *et seq.* (2006).[5] After reviewing the Act, we must find that it governs the question of Barbee's authority to act on his Mother's behalf in executing the Ripley admission documents. The

---

[3]Some jurisdictions have held that a nursing home resident may be bound by an arbitration agreement if the resident is deemed to be an intended third party beneficiary to the contract between the nursing home and the person executing the documents. *See Alterra Healthcare Corp. v. Estate of Linton ex rel. Graham*, 953 So. 2d 574, 579 (Fla. Dist. Ct. App. 2007); *Forest Hill Nursing Ctr., Inc. v. McFarlan*, No. 2007-CA-00327-COA, 2008 WL 852581, at *4–6 (Miss. Ct. App. April 1, 2008). The parties have not raised this issue and we do not address it other than to note that this argument has already been rejected by this Court. *See Ricketts v. Christian Care Ctr. of Cheatham County, Inc.*, No. M2007-02036-COA-R9-CV, 2008 WL 3833660, at *4–5 (Tenn. Ct. App. Aug. 15, 2008).

[4]Charles M. Key & Gary D. Miller, *The Tennessee Health Care Decisions Act: A Major Advance in the Law of Critical Care Decision Making*, TENN. B.J., Aug. 2004, at 25. This article provides a useful overview of the Act.

[5]The Tennessee statute is based on the Uniform Health Care Decisions Act. *See id.* at 31.

Act took effect on July 1, 2004, and Barbee signed the Ripley admissions documents seven days later, on July 8, 2004.[6]  Tennessee Health Care Decisions Act, 2004 Tenn. Pub. Acts ch. 862, § 6.

The Tennessee Health Care Decisions Act outlines how a competent adult may execute an "advance directive"[7] for health care that authorizes an "agent"[8] to make health care decisions should the adult lose the capacity to do so.  *See* T.C.A. § 68-11-1803(b) (2006).  In the alternative, a competent adult may "designate any individual to act as surrogate[9] by personally informing the supervising health care provider."[10]  *Id.* § 68-11-1806(a).

For an adult patient who lacks capacity and has not appointed an agent or designated a surrogate, the Act provides specific directions for the identification of a surrogate to make health care decisions on the patient's behalf.  Under such circumstances, the Act states: "the patient's surrogate shall be identified by the supervising health care provider and documented in the current clinical record of the institution . . . at which the patient is then receiving health care."  *Id.* § 68-11-1806(c)(1).  The surrogate is intended to be an adult "who has exhibited special care and concern for the patient, who is familiar with the patient's personal values, who is reasonably available, and who is willing to serve."  *Id.* § 68-11-1806(c)(2).  The Act states that such a surrogate "may make all health care decisions for the patient that the patient could make on the patient's own behalf," without judicial approval, with special requirements for a decision to withhold artificial nutrition and hydration.  *Id.* § 68-11-1806(e), (f).

The designated physician is authorized to identify such a surrogate only for a patient who "lacks capacity."[11]  *Id.* § 68-11-1806(c)(1).  The Act states unequivocally that the "determination that an individual lacks . . . capacity . . . must be made by the designated physician."  *Id.* § 68-11-1803(d).  The Act further cautions that a "surrogate may make a health care decision for a patient

---

[6]We find no place in the appellate record in which the Tennessee Health Care Decisions Act was cited to the trial court below.

[7]"Advance directive" is defined in the Act as "an individual instruction or a written statement relating to the subsequent provision of health care of the individual."  T.C.A. § 68-11-1802(a)(1) (2006).

[8]"Agent" is defined in the Act as "an individual designated in an advance directive for health care to make a health care decision for the individual granting the power."  *Id.* § 68-11-1802(a)(2).

[9]"Surrogate" is defined as "an individual, other than a patient's agent or guardian, authorized under this part to make a health care decision for the patient."  *Id.* § 68-11-1802(a)(18).

[10]"Supervising health care provider" is defined as "the designated physician" (also a defined term) or, if the designated physician is not available, the health care provider "who has undertaken primary responsibility for an individual's health care."  *Id.* § 68-11-1802(a)(17).  "Designated physician" means the physician who has been designated to take primary responsibility or who undertakes primary responsibility for the individual's health care.  *Id.* § 68-11-1802(a)(4).

[11]"Capacity" is defined as "an individual's ability to understand the significant benefits, risks, and alternatives to proposed health care and to make and communicate a health care decision."  *Id.* § 68-11-1802(a)(3).

-12-

who is an adult . . . if, and only if: (1) The patient has been determined by the designated physician to lack capacity; and (2) No agent or guardian has been appointed or the agent or guardian is not reasonably available." *Id.* § 68-11-1806(b).

Thus, the Act provides a comprehensive, common sense method for making health care decisions for a patient who does not have an agent or guardian, but who cannot act on her own behalf.[12] The apparatus set forth in the Act is practical and expeditious, eschewing judicial involvement, and can be accomplished in a matter of minutes in the healthcare facility that is to treat the patient. The statutory language is directive, mandating that both the determination of the patient's incapacity and the identification of the patient's surrogate be made by the patient's "designated physician," the physician with primary responsibility for the patient's care. A surrogate may make health care decisions on the patient's behalf only if these requirements are met.

Having outlined the pertinent provisions of the Tennessee Health Care Decisions Act, we apply them to the facts in this case. Execution of the documents admitting the Decedent to the Ripley skilled-care facility, including execution of the accompanying arbitration agreement, is clearly a "health care decision" within the meaning of the Act.[13] *See Owens*, 2007 WL 3284669, at *5–6 (holding that executing an arbitration agreement as part of a nursing home admission document is a health care decision under the Durable Power of Attorney for Health Care Act).[14] As noted above, we have concluded that Barbee had neither actual nor apparent authority to act as the Decedent's agent in signing the Ripley admission documents. Therefore, in order to be authorized to sign the documents, Barbee must have been identified as the Decedent's "surrogate" in accordance with the provisions of the Act. This requires (1) a determination that the Decedent lacked capacity to make her own health care decisions and (2) identification of Barbee as the Decedent's surrogate.

As noted above, the trial court found that at the time of her admission to Ripley the Decedent "did not have her mental faculties," "could not act in her own behalf," and "could not make decisions." We have held that these factual findings were supported by the record. Nevertheless, this does not equate to a determination that the Decedent lacked capacity for the purposes of the Health Care Decisions Act. In *McKey v. Nat'l Healthcare Corp.*, No. M2007-02341-COA-R3-CV, 2008 WL 3833714 (Tenn. Ct. App. Aug. 15, 2008), the decedent's daughter signed documents admitting her mother to the defendant nursing home, including an arbitration agreement. *Id.* at *1. The decedent's estate later sued the nursing home, and the nursing home sought to compel arbitration

---

[12]The Act also addresses the situation in which no surrogate is reasonably available for such a patient. *See id.* § 68-11-1806(c)(5).

[13]"Health care" is defined in the Act as "any care, treatment, service or procedure to maintain, diagnose, treat, or otherwise affect an individual's physical or mental condition." *Id.* § 68-11-1802(a)(6). A "health care decision" is defined as "consent, refusal of consent or withdrawal of consent to health care." *Id.* § 68-11-1802(a)(7).

[14]The definitions of "health care" and "health care decision" are nearly identical in both the Tennessee Health Care Decisions Act and the Tennessee Durable Power of Attorney for Health Care Act. *See* T.C.A. § 34-6-201(2), (3) (2007).

-13-

under the agreement. *Id.* The trial court found that the daughter did not have authority to sign the arbitration agreement and declined to compel arbitration. *Id.* The nursing home appealed. *Id.*

On appeal, this Court applied the Tennessee Health Care Decisions Act to determine whether the daughter had authority as her mother's "surrogate" to execute the arbitration agreement. *Id.* at *2. The decedent's estate conceded that the decedent was incompetent at the time of her admission to the nursing home. *Id.* at *3. This Court found nevertheless that the statutory requirement of a determination of incapacity was not met:

> Under Tenn. Code Ann. § 68-11-1812, a person is presumed to have the capacity to make his or her own health care decisions. To overcome that presumption, the statute requires a determination by a physician that the patient lacks capacity. Tenn. Code Ann. § 68-11-1806(b). The Tennessee Health Care Decision[s] Act affects what our courts have described as a fundamental right: personal autonomy, which includes the ability to make one's own decisions about health care. . . . We are unwilling to overlook the statutory requirements.

*Id.* (citation omitted). The Ripley admission documents signed by Barbee name Dr. Joe Hunt as the Decedent's attending physician, and he presumably had primary responsibility for the Decedent's health care and thus would likely be considered the Decedent's "designated physician" under the Health Care Decisions Act. *See id.* (finding that the physician named as the patient's attending physician in the nursing home admission agreement was the designated physician under the Act). Regardless, however, of the identity of the Decedent's designated physician, we find nothing in the record indicating that at the time of the Decedent's admission *any* physician had made the requisite determination that the Decedent lacked the capacity to make and communicate her health care decisions.

Moreover, there is no indication in the record that the Decedent's designated physician had identified Barbee as the Decedent's surrogate to make health care decisions on her behalf. The Act mandates that such identification be made by the "supervising health care provider," usually the designated physician unless he is unavailable. T.C.A. §§ 68-11-1802(a)(17), -1806(c)(1) (2006). *See McKey*, 2008 WL 3833714, at *3. In addition, the identification of the surrogate must be "documented in the current clinical record of the institution or institutions at which the patient is then receiving health care." T.C.A. § 68-11-1806(c)(1) (2006). *See McKey*, 2008 WL 3833714, at *4. The appellate record contains no indication that any physician charged with the Decedent's care made any notation in her clinical record identifying Barbee as the Decedent's surrogate under the Act. We must conclude, then, that the statutory requirements for Barbee to be considered as the Decedent's "surrogate" under the Health Care Decisions Act were not met.

### CONCLUSION

As the proponent of the arbitration agreement, the Kindred Defendants have the burden of establishing that Barbee had authority to sign the agreement on the Decedent's behalf. *See Exide*,

709 S.W.2d at 608. We have found that Barbee was not the Decedent's agent and did not have apparent authority under the common law, and that he was not the Decedent's surrogate under the Tennessee Health Care Decisions Act. We must conclude, then, that the Kindred Defendants have failed to carry their burden of proving that Barbee had authority to execute the arbitration agreement on the Decedent's behalf, and it is therefore unenforceable. Consequently, we must reverse the trial court's order compelling arbitration and remand the case to the trial court.

The decision of the trial court is reversed and the cause is remanded for further proceedings consistent with this Opinion. Costs of this appeal are assessed to the Appellees, Kindred Healthcare Operating, Inc.; Kindred Healthcare, Inc.; Kindred Nursing Center East, LLC; Kindred Hospitals Limited Partnership; Kindred Nursing Centers Limited Partnership d/b/a Ripley Healthcare and Rehabilitation Center; Nellie Wilson, in her capacity as Administrator of Ripley Healthcare and Rehabilitation Center; N. Jeannette McKinion, in her capacity as Administrator of Ripley Healthcare and Rehabilitation Center, and Jonathan Owens, in his capacity as Administrator of Ripley Healthcare and Rehabilitation Center.

_____

HOLLY M. KIRBY, JUDGE